**ZENITH ELECTRONICS CORPORATION, Plaintiff-Appellee,**

v.

**The UNITED STATES, Defendant-Appellee.**

**Appeal of DAEWOO ELECTRONICS CO., LTD., Defendant-Appellant.**

**No. 89-1186.**

United States Court of Appeals, Federal Circuit.

Aug. 24, 1989.

---

Frederick L. Ikenson, of Frederick L. Ikenson, P.C., Washington, D.C., argued for plaintiff-appellee. With him on the

brief, were J. Eric Nissley and Larry Hampel.

Velta A. Melnbrencis, Dept. of Justice, Washington, D.C., represented defendant-appellee.

David A. Gantz, Oppenheimer Wolff & Donnelly, Washington, D.C., argued for defendant-appellant. Timothy A. Harr, Oppenheimer Wolff & Donnelly, Washington, D.C., of counsel.

Before FRIEDMAN, RICH, and ARCHER, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a preliminary injunction issued by the United States Court of International Trade under the authority of the All Writs Act, 28 U.S.C. § 1651(a) (1982). The injunction bars the Department of Commerce (Commerce) from implementing changes in its determination of the level of duties resulting from administrative review of an antidumping duty order, without the authorization of the court. The changes were designed to correct alleged clerical errors in the determination. *Zenith Electronics Corp. v. United States,* 699 F.Supp. 296 (Ct. Int'l Trade 1988). We affirm.

## I

■ A. Commerce is authorized under 19 U.S.C. § 1673a (1982 & Supp. V 1987), to conduct formal investigations of whether any imported merchandise should be subject to antidumping duties. If, as a result of such proceedings, (1) Commerce concludes that merchandise is being, or is likely to be, sold in the United States at less than its fair value, and (2) the United States International Trade Commission determines that the importation of such merchandise materially injures or threatens so to injure a domestic industry, then (3) Commerce must publish an antidumping order directing the Customs Service to assess antidumping duties on present entries of such merchandise, 19 U.S.C. § 1673e(a), and to require the deposit of estimated antidumping duties on future entries. 19 U.S.C. § 1673e(a)(3) (1982).

■ Under 19 U.S.C. § 1675(a) (1982 & Supp. V 1987), Commerce is required, if requested, to review at least annually the amount of duty to be assessed under an antidumping order, and to publish in the Federal Register a notice of "Final Results of Antidumping Duty Administrative Review," for each such review. 19 U.S.C. § 1675(a)(1), (2); 19 C.F.R. § 353.53a(c)(8) (1988). Commerce is then required to instruct the Customs Service to assess antidumping duties on entries of merchandise made during the review period and to collect a cash deposit of estimated antidumping duties on future entries, on the basis of those results. 19 U.S.C. § 1675(a)(2); 19 C.F.R. § 353.53a(c)(9).

Under 19 U.S.C. § 1516a (1982 & Supp. V 1987), an interested party, defined by 19 U.S.C. § 1677(9) to include a domestic manufacturer, who participated in the administrative proceedings, may seek judicial review of the final antidumping determination or the results of the annual administrative review by filing a summons in the United States Court of International Trade within thirty days after the publication in the Federal Register of the determination or review. 19 U.S.C. § 1516a(a)(2)(B). The Court of International Trade has "exclusive jurisdiction of any civil action commenced" under that section. 28 U.S.C. § 1581(c) (1982).

B. On July 1, 1988, Commerce published the final results of an annual administrative review of the antidumping order covering color television receivers from Korea. *Color Television Receivers From Korea; Final Results of Antidumping Administrative Review,* 53 Fed.Reg. 24,975 (1988). On July 12, 1988, Commerce issued instructions to the Customs Service setting the cash deposit rates of estimated antidumping duties based upon that determination that will be required on subsequent importations of color television receivers from Korea.

On the same day following the publication of the final results in the Federal Register (July 1, 1988), the appellee, Zenith Electronics Corporation (Zenith), a domestic

television manufacturer, filed its summons in the Court of International Trade and, on July 13, 1988, filed its complaint challenging the final results. Three Korean manufacturers and a domestic labor union filed similar separate suits. Each complaint alleged that there were certain "clerical" errors in the calculations supporting those results.

The appellant Daewoo Electronics Company, Ltd. (Daewoo), a Korean television manufacturer, filed a request with Commerce that Commerce correct certain computer and clerical errors in that portion of the final results that related to Daewoo's imports. Daewoo asserted that the calculation of its dumping margins was erroneous because in making the calculation Commerce had improperly compared the sale prices of Daewoo sets in the American market with Daewoo's sales prices in the Korean market of different screen size sets.

On September 26, 1988, Commerce signed a notice of amended results proposing to correct certain "clerical errors" in the final results of the earlier administrative review. Commerce concluded that three ministerial errors had been made in the final results, that certain dumping margins were actually lower than had been determined, and that Daewoo's cash deposit rates should be lowered from 23.30 percent to 15.23 percent.

Two days later the Court of International Trade issued a temporary restraining order barring Commerce from "rescinding, revising, or otherwise altering" the final results or from altering the cash deposit instructions Commerce had issued to the Customs Service. The next day, after Zenith had informed the court that publication of amended results was "imminent," the court amended the restraining order to bar Commerce from publishing the proposed notice of amended results in the Federal Register.

Following oral argument, the court issued a preliminary injunction. In its opinion, the court held that "basic considerations of court jurisdiction, judicial authority and judicial economy dictate that alteration of an administrative result while it is under court review cannot be done without the approval of the Court." The court stated that it "further finds that [Zenith] was not given a fair opportunity to present its views regarding the asserted errors." 699 F.Supp. at 297. The court explained:

> The need to obtain the approval of the Court in order to change the administrative result is simply a recognition of the Court's jurisdiction over the action. One of the ways in which jurisdiction is exercised is by the power of the Court over the subject matter of the action. When a party to a judicial action contemplates doing anything to directly alter the subject matter of the judicial proceeding a proper regard for the authority of the Court requires that the permission of the Court be obtained. [Citation omitted.]

*Id.* The court further stated that "the administrative authority to correct clerical errors is not absolute. . . . [O]nce a judicial review has been commenced ... the authority of an administrative agency to correct its clerical errors must be exercised in a way that is consistent with the fundamental obligations which flow from subjection to judicial review." *Id.*

> This does not mean that Commerce cannot continue the process of identifying ministerial errors while a judicial proceeding is underway. But it does mean, that in order to effectuate corrections in a way that acknowledges the jurisdiction of the Court over the underlying determination and in order to give the Court its proper authority over the question of whether the corrections should be made and, if so, how judicial review should be conducted thereafter, Commerce must apply to the Court for permission to make amendments to the final determinations.

*Id.* at 298.

The court ruled that "it does not appear that counsel for plaintiff had sufficient time and access to the relevant material to make a meaningful response." *Id.* The court further noted that "there is also an element of irreparable injury to plaintiff in that it has not been given the benefit of adequate procedural safeguards and consequently faces the prospect that the cash

deposit rates required of someone who has been found to be dumping and causing injury will be lowered in a manner which is not in accordance with law." *Id.* at 299.

> The court
>
> conclude[d] that, in order to aid and preserve this Court's jurisdiction, it is necessary and appropriate to prevent any alteration of the Final Results from being undertaken without the authorization and approval of this Court.

*Id.*

The court's order enjoined Commerce from "rescinding, revising, or otherwise altering" either the final results of the administrative review or the cash deposit instructions issued to Customs. The order further provided that the

> injunction shall remain in effect during the pendency of this litigation or until such earlier time as this Court determines that the defects it has found in the proposed amendment of the Final Results have been remedied, that the amendment of the Final Results is appropriate and the Court specifically authorizes and approves such amendment.

*Id.* at 299–300.

Although the United States was a party defendant in the Court of International Trade and participated in the proceedings there in opposition to the motion for a preliminary injunction, the United States has not appealed from that injunction or otherwise participated in this appeal. Only Daewoo has appealed.

## II

■ Upon the filing of Zenith's suit challenging the final results of Commerce's annual review of the antidumping order, the Court of International Trade acquired "exclusive jurisdiction" to review that determination. 28 U.S.C. § 1581(c) (1982). The court conducts that review on the basis of the administrative record upon which Commerce based its final results. *See Ceramica Regiomontana, S.A. v. United States*, 557 F.Supp. 593 (Ct. Int'l Trade 1982); *East Chilliwack Fruit Growers Coop. v. United States*, 655 F.Supp. 499

(Ct. Int'l Trade 1987). The question before us is whether the Court of International Trade exceeded its authority or abused its discretion in requiring that, before Commerce may change its final results to correct alleged clerical error, the agency first must obtain the authorization of the court to do so. We hold that the court committed no error in imposing that requirement and that it properly implemented that requirement by issuing the preliminary injunction.

A. 1. A number of cases have recognized the authority of an administrative agency to correct inadvertent, ministerial errors. *See, e.g., American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958); *City of Long Beach v. Department of Energy*, 754 F.2d 379, 387 (Temp.Emer.Ct. App.1985); *Chlorine Inst. v. Occupational Safety & Health Admin.*, 613 F.2d 120, 123 (5th Cir.), *cert. denied*, 449 U.S. 826, 101 S.Ct. 89, 66 L.Ed.2d 30 (1980); *Howard Sober, Inc. v. I.C.C.*, 628 F.2d 36, 40–42 (D.C.Cir.1980); *United States v. Civil Aeronautics Bd.*, 510 F.2d 769, 772–73 (D.C.Cir.1975).

Those cases, however, have not addressed the issue here: whether, where the agency decision is under judicial review, the agency may take corrective action without prior judicial approval.

In holding that the Interstate Commerce Commission had the power to modify certificates of public convenience and necessity it had issued, to correct inadvertent errors in those certificates, the Supreme Court stated that the Commission's "power" to do so was "similar" to the "power and the duty" of courts "to correct judgments which contain clerical errors or judgments which have issued due to inadvertence or mistake." *American Trucking Ass'ns v. Frisco Transp. Co.*, 358 U.S. 133, 145, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958). The Court quoted the first sentence of Rule 60(a) of the Federal Rules of Civil Procedure, which it stated "recognizes this power and specifically provides that '[c]lerical mistakes in judgments, orders or other parts of the record and errors therein aris-

ing from oversight or omission may be corrected by the court at any time of its own initiative or on the motion of any party and after such notice, if any, as the court orders.' " *Id.*

■ The second sentence of Rule 60(a) provides:

During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

Once an appeal has been docketed, this provision requires the district court to obtain the permission of the appellate court before correcting clerical errors. *See, e.g., Smith v. Lujan,* 588 F.2d 1304, 1308 (9th Cir.1979).

■ By analogy, the same principle supports the conclusion of the Court of International Trade that once that court's exclusive jurisdiction has been invoked, Commerce may correct clerical errors only with the court's prior authorization. In the situation of either the Court of International Trade or a court of appeals, the effect of any correction of clerical error is to change either the decision under review or the factual basis upon which that decision was based.

2. Daewoo contends, however, that section 751(f) of the Tariff Act, as added by section 1333(b) of the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, 102 Stat. 1209 (to be codified at 19 U.S.C. § 1675(f)), authorizes Commerce to correct clerical errors in final determinations after the commencement of a judicial review proceeding, without first obtaining the court's authorization. That section states:

Correction of Ministerial Errors.—The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section [section 751]. Such procedures shall ensure opportunity for interested parties to present their views regarding any such errors. As used in this subsection [ (f) ],

the term 'ministerial error' includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial.

Section 751(f) does not give Commerce the authority that Daewoo believes it does. A condition of that authority is that Commerce may act only pursuant to the "procedures" it has "establish[ed]." On the critical dates in this case, Commerce had no "establish[ed] procedures for the correction of ministerial errors."

Section 751(f) was enacted and became effective on August 23, 1988. Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1337(a), 102 Stat. 1211. Commerce had promulgated six-month temporary procedures for correcting clerical errors on February 26, 1988. *See Antidumping and Countervailing Duty Proceedings; Proposed Procedures for Review of Calculations and Correction of Clerical Errors,* 53 Fed.Reg. 5,813 (1988). Those procedures, however, expired on August 26, 1988, three days after the Act became effective and 31 days before Commerce, on September 26, 1988, signed the notice of amended results that incorporated the correction of the alleged clerical errors. Commerce reinstated the temporary procedures, which did not refer to section 751(f), on October 24, 1988, eleven days after the Court of International Trade issued its preliminary injunction. *See Procedures for Review of Calculations and Correction of Ministerial Errors,* 53 Fed.Reg. 41,617 (1988).

■ Thus, the procedures that section 751(f) required as a prerequisite to the exercise of Commerce's statutory authority to correct ministerial errors were not in effect on the date of either Commerce's action that Zenith challenges or the court's preliminary injunction. Daewoo, therefore, cannot rely upon that section as a ground for challenging the Court of International Trade's preliminary injunction.

In any event, section 751(f) did not address the question of Commerce's authority to make ministerial changes without prior judicial authorization after judicial review of Commerce's determination had been instituted. The statutory language addresses only the general authority of Commerce to correct such errors. There is nothing in the statute's unambiguous language or legislative history that even suggests that Congress thereby intended to authorize Commerce to correct clerical errors without prior judicial authorization when the determination that the agency sought to change already was subject to the exclusive jurisdiction of the Court of International Trade.

3. Commerce makes no contention before us that requiring it to obtain prior judicial approval before correcting clerical errors in final results that are under judicial review would cause serious difficulties or problems in conducting Commerce's annual review of antidumping orders. Indeed, it is difficult to see how Commerce's compliance with that requirement would or even could have that effect.

■ B. The remaining question is whether the Court of International Trade acted within its authority under the All Writs Act and within its discretion by prohibiting Commerce from correcting clerical errors in the final results without prior judicial approval. The answer is yes.

The All Writs Act, 28 U.S.C. § 1651(a) (1982), authorizes courts to issue "all writs necessary or appropriate" in aid of their respective jurisdictions and "agreeable to the usages and principles of law." The invocation of the Court of International Trade's exclusive jurisdiction by the filing of Zenith's suit also gave the court the " 'limited judicial power to preserve the court's jurisdiction ... by injunction pending review of an agency's action through the prescribed statutory channels.' " *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 604, 86 S.Ct. 1738, 1742, 16 L.Ed.2d 802 (1966) (quoting *Arrow Transp. Co. v. Southern Ry.*, 372 U.S. 658, 671 n. 22, 83 S.Ct. 984, 991 n. 22, 10 L.Ed.2d 52 (1963)). The "only real question involved" is "whether the exercise of the power by the [court] was proper in the case[ ] now before us." *La Buy v. Howes Leather Co.*, 352 U.S. 249, 255, 77 S.Ct. 309, 313, 1 L.Ed.2d 290 (1957).

The preliminary injunction here is intended to insure that Commerce does not alter the final results that are now before the court for review, without the court's prior authorization. It was a proper exercise of the All Writs Act's "broad grant of authority to federal courts," *Green v. Warden, U.S. Penitentiary*, 699 F.2d 364, 367 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983), "to issue writs 'appropriate' to the proper exercise of their jurisdiction...." *United States v. New York Tel. Co.*, 434 U.S. 159, 173, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977).

1. The injunction was a reasonable and appropriate implementation of the Court of International Trade's ruling that changes by Commerce in its final results without prior court authorization would be improper because those changes would impair the court's jurisdiction to review the final results that Zenith's suit challenged. The injunction protects the court's jurisdiction by preventing Commerce from taking action that would impinge upon and interfere with that jurisdiction. A mere declaration by the court that Commerce's proposed unilateral changes in the final results, in the absence of any effective order barring those changes, would not adequately protect the court's jurisdiction. The preliminary injunction prohibiting Commerce from making those changes without prior judicial approval thus was "appropriate in aid of" the court's jurisdiction and "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

2. Since, as the Court of International Trade stated, "the impairment of the Court's jurisdiction is the primary ground of injunctive relief in this action," 699 F.Supp. at 299, there is no occasion to consider Daewoo's contention that the Court of International Trade abused its discretion in issuing the preliminary injunction because Zenith had not established the four traditional criteria for injunctive relief. *See, e.g., S.J. Stile Assoc. Ltd. v.*

*Snyder,* 646 F.2d 522, 525 (C.C.P.A.1981). The court was not required to address those criteria (although it discussed three of them) when it issued a preliminary injunction to protect its own jurisdiction.

## CONCLUSION

The preliminary injunction of the United States Court of International Trade is

AFFIRMED.