IPSCO, INC. AND IPSCO STEEL, INC., PLAINTIFFS, AND ALGOMA STEEL CORP., LTD., AND SONCO STEEL TUBE DIV., FERRUM, INC., PLAINTIFF-INTERVENORS *v.* UNITED STATES, DEFENDANT, AND LONE STAR STEEL CO., DEFENDANT-INTERVENOR

Court No. 86-06-00753

(Dated April 16, 1990)

*Barnes, Richardson & Colburn (Rufus E. Jarman, Jr., Josephine N. Belli)* for plaintiffs.
*Stuart M. Gerson,* Assistant Attorney General, *David M. Cohen,* Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, *(Jeanne E. Davidson),* for defendant; *(Craig L. Jackson)* Attorney-Advisor, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for defendant.
*Dewey, Ballentine, Bushby, Palmer & Wood (Michael H. Stein)* and *Akin, Gump, Strauss, Hauer & Feld (Warren E. Connelly, Valerie A. Slater)* for defendant-intervenor.

OPINION

RESTANI, *Judge:* Plaintiffs, Ipsco, Inc. and Ipsco Steel, Inc. (Ipsco) bring this action challenging the final determination on remand by the United States Department of Commerce, International Trade Administration (ITA or Commerce) issued on November 8, 1989. Pursuant to the order of this court in *Ipsco, Inc.* v. *United States,* 13 CIT 402, 714 F. Supp. 1211 (1989), Commerce revised its calculations and adopted a methodology which took into account the significant differences in

value between prime and "limited service" oil country tubular goods (OCTG), both of which were subject to investigation. Plaintiffs agree "that the remand determination successfully carried out the instruction of the Court to the extent that it developed and utilized a reasonable methodology for determining different costs for limited service and prime OCTG, which adequately reflect the substantial differences in the market values of these two products." Ipsco Comments on Remand Determination (P. Brief) at 2.

ARGUMENTS

Plaintiffs challenge the determination, because ITA's reduction of Ipsco's average dumping margin from 33.78% to 32.63%, a mere 1.15%, was not a result, in Ipsco's view, which could have occurred if ITA had used correct data and calculations in the remand. Ipsco claims that Commerce must have erred because it "found identified limited service costs ranging between 40% and 60% of the cost of prime OCTG, with an average of about 48% of the cost of prime", *id.*, and had previously found "that 57.6% of Ipsco's margin was accounted for by sales of limited service OCTG." *Id.* Plaintiffs contend that "a reduction of the constructed value in the order of 50% would be expected to produce a far larger reduction than 1.15%." *Id.* at 3.

Ipsco contends that backup documents which it received after remand from Commerce demonstrate "that with respect to determination of constructed value of a particular grade of OCTG which was produced and sold during the first two quarters of 1985, the Department only utilized tonnage data for the first quarter of 1985", and that "[r]eview of the record indicates that the Department utilized data for the first *two* quarters of 1985 for all other grades." *Id.* [Emphasis in original]. Plaintiffs believe this to be a ministerial error likely resulting from a misordering of data by ITA, and request that ITA correct it according to section 1333(a) of the Omnibus Trade and Competitiveness Act of 1988. *Id.* at 9. The relevant portion of section 1333(a) is codified at 19 U.S.C. § 1673d(e) (1988). Plaintiffs further explain in their request to ITA for correction of the alleged error that the use of only first quarter data was a significant problem because yields were abnormally low in that quarter. P. Brief at 6.

Commerce neither confirms nor denies that it erred. It claims, rather, that plaintiffs did not give it sufficient data after remand to find any error, Defendant's Response to Ipsco's Comments upon Second Remand Determination (D. Brief) at 6 n.3, and that in any case any such error would have occurred prior to the preliminary determination. *Id.* at 5 n.2. Defendant further states that "[s]ection 1333 merely authorized Commerce to adopt procedures to provide for the correction of ministerial errors 'within a reasonable time' of the issuance of the final determination." D. Brief at 8. Therefore, it avers, Ipsco's request is untimely and should have been brought after the original final determination, *Antidumping; Oil Country Tubular Goods From Canada; Final Determination of Sales at Less Than Fair Value,* 51 Fed. Reg. 15,029

(April 22, 1986). Moreover, defendant claims that it is precluded from unilaterally amending a determination once the determination has been brought within the jurisdiction of the Court of International Trade. *Zenith Electronics Corp.* v. *United States,* 884 F.2d 556, 561–62 (Fed. Cir. 1989).[1] Intervenor agrees that if any error occurred, it occurred in the original determination and was not timely raised.

Ipsco replies that its challenge goes not to the original determination, but to the remand determination, in which ITA conducted a new and thorough investigation. Plaintiffs' Reply to Second Remand Determination Responses of Defendant and Defendant-Intervenor (P. Reply Brief) at 4–5. Plaintiffs also claim that even if ITA used the same erroneous data in the original determination, Commerce's faulty methodology masked the error, which, in and of itself, sufficiently explained the flawed dumping margin at the time. P. Brief at 7.

## DISCUSSION

First, the court finds defendants' lack of position on the existence of a mistake puzzling. The governmental defendant says it cannot find if there is an error, allegedly because plaintiff has not supplied proper cites.[2] Intervenor, on the other hand, seems to know where the "error" occurred, but says it was a judgment call and not a simple clerical or ministerial error. The court is not persuaded that any acceptable judgment was made to use first quarter data only for this grade and it is unconvinced the plaintiffs' presentation was so defective that no search for error was required by ITA. In any case, if the agency charged with conducting the investigation cannot state whether or not an error exists, the court wonders how plaintiffs could have found the problem after the original determination. Surely ITA can discern if it used correct tonnages and resulting cost per ton ratios in its original and remand calculations.[3]

Second, while it appears only one quarter of data was used for a particular grade of OCTG on remand, the court declines to hold that ITA in fact erred or that it should be instructed to correct the error at this point. As indicated, whether or not the alleged error was in the original determination and whether or not Ipsco could and should have discovered such error after the original final determination, has not been adequately demonstrated by ITA or by the defendant-intervenor because neither has taken a position as to whether Commerce actually used the

---

[1] Now that the parties are before the court once more, this final argument may be of no practical moment.

[2] Plaintiffs have supplied the citations on ITA's alleged "mispagination," *see* P. Reply Brief at 15 n.4, but it appears that ITA was not "at sea" because of any missing cites in this regard. Plaintiffs' concerns are discernable enough that the parties were able to make many conclusions about them. If ITA needed more citations to its own record, it should have requested them. Plaintiffs' exhibit A, however, clearly refers to remand worksheet A 22 which in turn cites pages of the original record with first quarter cost and tonnage data. P. Brief, Exhibit A at 2.

[3] While both first and second quarter production data are in the original record, defendant has not provided cites to anything in the original record to show if cost of production was also calculated on first quarter data in the original investigation.

wrong data in that determination or in the remand. This lack of direct discussion of the issue makes it difficult to reach a conclusion as to what transpired.

Third, the court cannot agree with plaintiffs at this point that it is irrelevant whether or not the error occurred in the original determination. If use of the disputed figures on tonnage or dollar to tonnage ratios derived from only first quarter data affected the potential outcome under either ITA's or plaintiffs' earlier claimed methodology, this problem should have been addressed at that time. Thus, what occurred in the original determination and immediately thereafter, and how that is reflected in the original record may be crucial. Moreover, although the remand order might have been broad enough to allow ITA to use new tonnage-related data on remand does not mean it was required to do so.[4]

Therefore, the court remands this matter to ITA to determine whether it used correct tonnage data and dollar to tonnage ratios and, if not, whether the error occurred in the original determination, whether it was germaine to the original determination, and whether Ipsco could have discovered the problem after the original determination through the exercise of the amount of diligence appropriate under the facts of the case. If ITA determines that an error was made, but was not discoverable after the original final determination with an exercise of an appropriate amount of diligence, or was irrelevant to that determination, then ITA shall recalculate the average dumping margin using the correct data. ITA shall cite the portion of the record which supports its determination. If ITA needs more information from the parties it shall request it.

ITA shall report the results of the remand to the court within 25 days of this order. Plaintiffs shall file any comments they wish to make with this court within 10 days of receipt of ITA's results, citing to any appropriate sections of the administrative record and providing copies of those sections. Defendants may respond in seven days.

---

[4] Obviously, the more new data is used on remand the more likely it is that counter challenges could be raised. Whatever reason ITA had for requesting more than six months of data, it would appear appropriate on remand to use already accepted data, if possible. The particular facts of a case will determine what action is appropriate to fulfill a remand order without reopening issues that should remain closed.