**FEDERAL–MOGUL CORPORATION,**
**Plaintiff,**

**The Torrington Company,**
**Plaintiff–Intervenor,**

v.

**The UNITED STATES, Defendant,**

**SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Limited and SKF Sverige, AB; Fag Kugelfischer Georg Schafer KGaA, Fag Cuscinetti SpA, Fag (UK) Limited, Barden Corporation (UK) Limited, Fag Bearings Corporation and Barden Precision Bearings Corporation; RHP Bearings and RHP Bearings Inc.; Peer Bearing Company; Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A.; NSK Ltd. and NSK Corporation; SNR Roulements; NTN Bearing Corporation of America, American NTN Bearing**

**Manufacturing Corporation, NTN Corporation and NTN Kugellagerfabrik (Deutschland) GmbH, Defendant–Intervenors.**

**Court Nos. 92–06–00422, etc.***

United States Court of
International Trade.

Nov. 23, 1992.

Frederick L. Ikenson, P.C., Frederick L. Ikenson, J. Eric Nissley, Joseph A. Perna, V and Larry Hampel, DC, for plaintiff, plaintiff-intervenor and defendant-intervenor Federal–Mogul Corp.

Stewart and Stewart, Eugene L. Stewart, Terence P. Stewart, James R. Cannon, Jr., Wesley K. Caine, Robert A. Weaver, John M. Breen, Myron A. Brilliant, Margaret E.O. Edozien, Amy S. Dwyer, Lane S. Hurewitz and Margaret L.H. Pnq, DC, for plaintiff, plaintiff-intervenor and defendant-intervenor The Torrington Co.

Powell, Goldstein, Frazer & Murphy, Richard M. Belanger, Neil R. Ellis and D. Christine Wood, DC, for plaintiff Caterpillar Inc.

Baker & McKenzie, Kevin M. O'Brien, Linda N. Bogin and Michael A. Lawrence, DC, for plaintiff Emerson Power Transmission Corp.

Grunfeld, Desiderio, Lebowitz & Silverman, Max F. Schutzman and Andrew B.

\* See attached Schedule.

Schroth, New York City, for plaintiffs and defendant-intervenors FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Ltd., Barden Corp. (UK) Ltd., FAG Bearings Corp., The Barden Corp. and Barden Precision Bearings Corp.

Arent Fox Kintner Plotkin & Kahn, Stephen L. Gibson, DC, for plaintiffs INA Walzlager Schaeffler KG and INA Bearing Co., Inc.

Coudert Bros., Robert A. Lipstein and Christer L. Mossberg, DC, for plaintiff Inoue Jikuuke Kogyo Co., Ltd.

Powell, Goldstein, Frazer & Murphy, Peter O. Suchman, Neil R. Ellis, T. George Davis and Niall P. Meagher, DC, for plaintiffs and defendant-intervenors Koyo Seiko Co., Ltd. and Koyo Corp. of U.S.A.

O'Melveny & Myers, Greyson L. Bryan, Bruce R. Hirsh and Steven A. Spencer, Los Angeles, CA, for plaintiffs Nachi–Fujikoshi Corp., Nachi–America, Inc. and Nachi Technology, Inc.

Tanaka Ritger & Middleton, H. William Tanaka, Michele N. Tanaka and Michael J. Brown, DC, for plaintiffs Nippon Pillow Block Sales Co., Ltd. and FYH Bearing Units USA, Inc.

Coudert Bros., Robert A. Lipstein, Matthew P. Jaffe, Nathan V. Holt and Grace W. Lawson, DC, for plaintiffs and defendant-intervenors NSK Ltd. and NSK Corp.

Barnes, Richardson & Colburn, Robert E. Burke, Donald J. Unger, Kazumune V. Kano and Diane A. MacDonald, Chicago, IL, for plaintiffs and defendant-intervenors NTN Bearing Corp. of America, American NTN Bearing Mfg. Corp., NTN Kugellagerfabrik (Deutschland) GmbH and NTN Corp.

Venable, Baetjer, Howard & Civiletti, John M. Gurley and Lindsay B. Meyer, DC, for plaintiff and defendant-intervenor Peer Bearing Co.

Donohue and Donohue, William J. Phelan, Stamford, CT, for plaintiff Pratt & Whitney Canada, Inc.

Covington & Burling, Harvey M. Applebaum, David R. Grace and Michael P. Socarras, DC, for plaintiffs and defendant-

intervenors RHP Bearings, RHP Bearings Inc. and United Precision Industries, Ltd.

Howrey & Simon, Herbert C. Shelley, Alice A. Kipel, Juliana M. Cofrancesco and Thomas J. Trendl, DC, for plaintiffs and defendant-intervenors SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Ltd. and SKF Sverige, AB.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell, David L. Simon, Philip S. Gallas, Andrew B. Schroth and Matthew L. Pascocello, DC, for plaintiff and defendant-intervenor Societe Nouvelle de Roulements.

Willkie Farr & Gallagher, William J. Clinton, James P. Durling and Barbara K. Summers, DC, for plaintiffs Yamaha Motor Co., Ltd. and Yamaha Motor Corp., U.S.A.

Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Civ. Div., U.S. Department of Justice, Marc E. Montalbine; Stephen J. Claeys, Craig R. Giesze and Dean A. Pinkert, Atty.–Advisors, Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, DC, of counsel, for defendant.

Grunfeld, Desiderio, Lebowitz & Silverman, Bruce M. Mitchell and Philip S. Gallas, DC, for defendant-intervenor GMN Georg Muller Nurnberg AG.

## OPINION

TSOUCALAS, Judge:

Defendant, the Department of Commerce, International Trade Administration ("ITA"), requests this Court to grant leave for the ITA to correct alleged ministerial errors contained in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews ("Final Results")*, 57 Fed.Reg. 28,360 (1992).

## BACKGROUND

After the ITA published the Final Results for the second administrative review of imports of antifriction bearings from various countries, the ITA disclosed its cal-

culations of the dumping margins to interested parties who requested access. After disclosure, the ITA accepted comments on alleged ministerial errors contained in the Final Results pursuant to 19 U.S.C. § 1675(f) (1988) and 19 C.F.R. § 353.28 (1992). ITA analyzed the comments it received on alleged ministerial errors and determined which allegations were valid.

ITA was able to publish amended final results correcting the ministerial errors it had found only for certain countries, companies and products. *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden, Thailand, and the United Kingdom; Amendment to Final Results of Antidumping Duty Administrative Reviews*, 57 Fed.Reg. 32,969 (1992). ITA was unable to publish corrected final results for the errors now at issue before this Court because Federal–Mogul Corporation ("Federal–Mogul"), NTN Bearing Corporation of America, NTN Bearing Manufacturing Corporation and NTN Corporation, Nippon Pillow Block Sales Co., Ltd. and FYH Bearing Units USA, Inc. each filed a summons with this Court invoking this Court's exclusive jurisdiction before the errors could be corrected.

Therefore, on September 1, 1992, defendant filed a motion asking this Court to grant defendant leave to correct certain ministerial errors and issue amended final results in these actions. *Defendant's Motion for Leave to Correct Ministerial Errors.*

SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Limited and SKF Sverige, AB, NSK Ltd. and NSK Corporation, Koyo Seiko Co., Ltd. and Koyo Corporation of U.S.A., Inoue Jikuuke Kogyo Co., Ltd. and Caterpillar Inc. support defendant's motion. *Response of SKF USA Inc., SKF France S.A., SKF GmbH, SKF Industrie, S.p.A., SKF (U.K.) Limited and SKF Sverige, AB, in Support of Defendant's Motion for Leave to Correct Ministerial Errors; Plaintiffs' (NSK) Reply Memorandum in Support of Defendant's Motion for Leave to Correct Ministerial Errors; Plaintiffs' (Koyo) Response to Defendant's Motion for Leave to Correct Ministerial Errors; Plaintiffs' (Inoue Jikuuke Kogyo Co., Ltd.) Reply Memorandum in Support of Defendant's Motion for Leave to Correct Ministerial Errors; Plaintiff's (Caterpillar Inc.) Response to Defendant's Motion for Leave to Correct Ministerial Errors.* FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corporation (UK) Limited, FAG Bearings Corporation and The Barden Corporation (collectively "FAG") also support the defendant's motion but ask that the Court require the ITA to correct an alleged ministerial error in regard to FAG Cuscinetti's dumping margin which is not covered by defendant's motion. Specifically, the alleged error is the inadvertent omission of home market inventory carrying costs from the pool of home market indirect selling expenses subject to the ESP offset in cases where US price was compared to constructed value. *Response of Defendant–Intervenor and Plaintiff, FAG, in Support of Government's Motion for Leave to Correct Ministerial Errors.*

Federal–Mogul and The Torrington Company ("Torrington") oppose the defendant's motion. *Federal–Mogul Corporation's Response to Defendant's Motion for Leave to Correct Ministerial Errors ("Federal–Mogul's Response"); Opposition to Defendant's Motion for Leave to Correct Ministerial Errors ("Torrington's Opposition").*

ITA specifically requests leave to correct the following errors:

I. *Ball Bearings*

A. France

1. For Pratt & Whitney Canada, Inc., application of a level of trade adjustment to home market unit prices that were adjusted for discounts and rebates rather than to Pratt & Whitney's gross price list unit prices.

2. For SKF France, setting of home market commissions at zero, and treatment of warranty and technical service

expenses as both indirect and direct expenses.

3. For SNR Roulements, double-counting of commissions and U.S. inland freight expenses; making of a typographical error in connection with domestic inland insurance; and failure to implement a variable for physical differences in merchandise as specified in the final results of the administrative review.

### B. Germany

1. For FAG Germany, computer program's failure to eliminate FAG Germany's home market family matches where all home market sales were below cost, and the setting of some indirect selling expenses at zero; making of an adjustment for differences in merchandise for some constructed value comparisons and failure to include home market inventory carrying costs in constructed value comparisons; and addition of imputed credit costs and inventory carrying costs to FAG Germany's cost of production for the home market cost test.

2. For Pratt & Whitney Canada, Inc., application of a level of trade adjustment to home market unit prices that were adjusted for discounts and rebates rather than to Pratt & Whitney's gross price list unit prices.

3. For SKF Germany, addition (rather than subtraction) of billing adjustment # 2 to indirect selling expenses; failure to delete billing adjustment # 2 from adjusted home market price when applying the sales below cost test; and computer program's treatment of warranty and technical service expenses as both indirect and direct expenses.

### C. Italy

1. For FAG Italy, inclusion of inventory carrying costs and credit expenses in the calculation of cost of production; application of an adjustment for differences in merchandise to the constructed value comparisons; exclusion of the home market indirect selling expense variable from the constructed value margin calculations; and double-counting of inventory write-offs in calculating cost of production.

2. For SKF Italy, addition (rather than subtraction) of billing adjustment # 2 to indirect selling expenses; failure to delete billing adjustment # 2 from adjusted home market price when applying the sales below cost test; and computer program's treatment of warranty and technical service expenses as both indirect and direct expenses.

### D. Japan

1. For Inoue Jikuuke Kogyo Co., Ltd. ("IJK"), calculation of constructed values for particular parts using purchase price amounts that were incorrect by a factor of 100 due to a Commerce error in formatting IJK's computer tape; and computer program's failure to apply the 20 percent difference in merchandise "cap" to IJK's transactions.

2. For Koyo Seiko, computer program's failure to correctly apply the best information available value intended by Commerce for the United States sales for which Koyo Seiko failed to provide cost of production data for matching home market sales.

3. For Nachi–Fujikoshi, failure to apply the ten percent minimum for general expenses and the eight percent minimum for profit when calculating constructed value.

4. For NSK, basing of pre-sale United States inland freight upon an incorrect price; exclusion of home market indirect selling expenses from home market indirect selling expenses variable; placement of consecutive plus signs in the string of variables used to determine United States direct selling expenses; treatment of NSK's inventory carrying costs and technical service expenses as direct selling expenses rather than indirect selling expenses; failure to convert pre-sale inland freight for purchase price sales from yen to dollars, exclusion of the word "not" from a sentence found on 57 Fed.Reg. 28418 in Commerce's *Federal Register*

notice (which sentence should read, "However, we agree with Torrington that NSK's early payment discounts or distributor incentives are *not* included as expenses in its COP data."); and computer program's failure to apply the 20 percent difference in merchandise "cap" to NSK's transactions.

5. For NTN, failure to convert the price variable used to calculate the level of trade adjustments from yen to dollars; and computer program's failure to apply the ten percent minimum to general, selling and administrative expenses used to calculate constructed value.

E. Sweden

1. For SKF Sweden, treatment of some selling expenses as if they were reported in Swedish Kronors when they were actually reported in Deutsche Marks; and treatment of warranty and technical service expenses as both indirect and direct expenses.

F. United Kingdom

1. For Barden Corp., addition of the United Kingdom value-added tax percentage to United States and home market prices *rather than multiplification [sic]* of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices.

2. For FAG U.K., addition of the United Kingdom value-added tax percentage to United States and home market prices rather than multiplification [sic] of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices; failure to apply the 20 percent difference in merchandise "cap" to the margin analysis; and failure to deduct commissions from United States price.

3. For SKF U.K., double-counting of movement expenses; treatment of warranty and technical service expenses as both indirect and direct expenses; subtraction of SKF U.K.'s "other discounts" twice from United

States price; and addition of the United Kingdom value-added tax percentage to United States and home market prices rather than multiplification [sic] of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices.

II. *Cylindrical Roller Bearings*

A. Japan

1. For NSK, exclusion of home market indirect selling expenses from the home market indirect selling expenses variable; placement of consecutive plus signs in the string of variables added to determine United States direct selling expenses; treatment of inventory carrying costs and technical service expenses as direct selling expenses rather than indirect selling expenses; and computer program's failure to apply the 20 percent difference in merchandise "cap" to NSK's transactions.

Defendant's Proposed Order at 2–5.

*Discussion*

The Court's jurisdiction over this matter is derived from 28 U.S.C. § 1581(c) (1988).

This Court has stated "that fair and accurate determinations are fundamental to the proper administration of our dumping laws" and that "courts have uniformly authorized the correction of any clerical errors which would affect the accuracy of a determination." *Koyo Seiko Co. v. United States,* 14 CIT ——, ——, 746 F.Supp. 1108, 1110 (1990); *see, e.g., Daewoo Elecs. Co. v. United States,* 13 CIT 253, 279–80, 712 F.Supp. 931, 954 (1989); *Asociacion Colombiana de Exportadores v. United States,* 13 CIT 13, 28, 704 F.Supp. 1114, 1126 (1989); *Serampore Indus. Pvt. Ltd. v. United States Dep't of Commerce,* 12 CIT 825, 834, 696 F.Supp. 665, 673 (1988); *Gilmore Steel Corp. v. United States,* 7 CIT 219, 223–24, 585 F.Supp. 670, 674 (1984); *Atlantic Sugar, Ltd. v. United States,* 1 CIT 211, 511 F.Supp. 819 (1981).

Congress provided the ITA with authority to correct ministerial errors in the final

results of administrative reviews in 19 U.S.C. § 1675(f) which states:

The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section. Such procedures shall ensure opportunity for interested parties to present their views regarding any such errors. As used in this subsection, the term "ministerial error" includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial.

Congress explained its rationale for granting the ITA authority to correct ministerial errors after the publication of final results in administrative reviews, stating:

It has come to the Committee's attention that certain final determinations contain clerical and other errors which are not corrected, under current procedures, unless the parties to the proceedings resort to judicial review of the final determination. *The result is expensive litigation that unnecessarily burdens the court system, in order to correct essentially unintended errors.* Therefore, the Committee has adopted this provision to allow for the correction of ministerial errors in final determinations within a limited time period after their issuance.

H.R.Rep. 100–40, 100th Cong., 1st Sess., pt. 1, at 144 (1987) (emphasis added).

ITA has promulgated regulations to implement Congress' mandate to correct ministerial errors which state in pertinent part:

§ 353.28 Procedures for the correction of ministerial errors.

(a) *In general.* The Secretary will disclose the calculations performed in ... a final results of an administrative review of an antidumping duty order pursuant to § 353.22, to any party to the proceeding making a request in accordance with this section. A party to the proceeding must file such a request in writing with the Secretary within five business days

of the date of publication of the relevant ... final results of administrative review. A party to whom the Secretary has disclosed final calculations may submit comments concerning any ministerial errors in such calculations.

(b) *Time limits.* Comments must be filed within five business days after the date of disclosure.... Interested parties may file replies to any comments submitted under paragraph (a) of this section....

(c) *Corrections.* The Secretary will analyze any comments received and, if appropriate, correct any ministerial errors by amending the ... final results of administrative review.

19 C.F.R. § 353.28.

■ However, the filing of a summons with this court challenging the final results of an administrative review vests this court with exclusive jurisdiction over the challenged administrative review. *Zenith Elecs. Corp. v. United States,* 884 F.2d 556, 561 (Fed.Cir.1989). Therefore, when a party, as here, files a summons challenging the final results of an administrative review before the ITA has an opportunity to correct ministerial errors in those final results, the ITA must obtain this court's permission to make such corrections and to publish amended final results. *Id.*

■ In this action, the ITA has followed its procedures for correcting ministerial errors by disclosing its calculations to all interested parties who requested access, accepting comments on alleged ministerial errors and analyzing these comments to determine what, if any, ministerial errors exist. The Court believes that the necessary corrections have already been prepared and ITA only needs this Court's permission to implement them and publish amended final results for the administrative reviews challenged here.

Federal–Mogul argues that the ITA has not sufficiently described the alleged ministerial errors or explained exactly how the ITA proposes to fix those errors. Federal–Mogul also argues that it was not provided sufficient time, pursuant to the ITA's regulations, to thoroughly analyze these Final

Results for possible ministerial errors. As a result, the ITA's current motion may be one-sided. Finally, Federal–Mogul argues that the parties do not currently have access to the business proprietary version of the administrative record and so cannot fully respond to the ITA's motion. *Federal–Mogul's Response* at 2–5.

Torrington agrees with Federal–Mogul's arguments. *Torrington's Opposition* at 2–3. Further, Torrington disagrees with the ITA that each of the alleged ministerial errors cited by the ITA for correction are in fact ministerial errors. *Id.* at 3–5.

Federal–Mogul and Torrington's arguments miss the point. The ITA's goal in conducting an administrative review is to calculate dumping margins as accurately as possible. Federal–Mogul and Torrington had a full opportunity to review and comment on any ministerial errors in the ITA's Final Results pursuant to 19 C.F.R. § 353.-28. If certain parties had not filed summonses so rapidly after the publication of the Final Results in these reviews, there is no doubt that the ITA would have proceeded to make the corrections which it is now seeking the Court's permission to make. There also seems to be little dispute that most of the corrections the ITA wishes to make are indeed ministerial errors which deserve correction.

It is clear that time and effort will be saved if the subject of the judicial challenges now before this Court are what the ITA considers to be the true and accurate final results from the second administrative reviews. Also, allowing the corrections may eliminate many of the issues raised in many of the complaints which have been filed with this Court challenging these Final Results. Allowing all parties in these actions freedom to file amended pleadings to take into account any changes made in the Final Results will prevent prejudice to any party and expedite resolution of these actions.

█ As for FAG's request that this Court order the ITA to correct an alleged ministerial error regarding FAG Cuscinetti SpA's home market inventory carrying costs, which is not included in defendant's motion, the ITA is instructed to determine if the alleged error is in fact a ministerial error which should be corrected. If the ITA determines that this is a ministerial error which should be corrected, the ITA is instructed to correct it. FAG has already raised this issue in its complaint and can maintain its challenge on this issue in any amended pleadings which FAG may file if the ITA determines that the alleged error should not be corrected. *See FAG Kugelfischer Georg Schafer KGaA v. United States*, Court No. 92–07–00487 (Complaint of FAG Kugelfischer Georg Schafer KGaA, FAG Cuscinetti SpA, FAG (UK) Limited, Barden Corporation (UK) Limited, FAG Bearings Corporation and The Barden Corporation, Count II, para. 15) (August 21, 1992).

Therefore, this Court grants the ITA leave to correct the ministerial errors listed above and to publish amended final results incorporating these corrections. All parties to these actions are granted leave to file amended pleadings pursuant to Rule 15 of the Rules of this Court to take into account any changes in the Final Results which result from this opinion.

### ORDER

Upon consideration of defendant's motion for leave to correct ministerial errors, and all responses thereto; it is hereby

ORDERED that the motion is granted and the Department of Commerce, International Trade Administration ("ITA"), is granted leave to correct the following ministerial errors contained in *Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews* ("*Final Results*"), 57 Fed.Reg. 28,360 (1992):

I. *Ball Bearings*

A. France

1. For Pratt & Whitney Canada, Inc., application of a level of trade adjustment to home market unit prices that were adjusted for discounts and re-

bates rather than to Pratt & Whitney's gross price list unit prices.

2. For SKF France, setting of home market commissions at zero, and treatment of warranty and technical service expenses as both indirect and direct expenses.

3. For SNR Roulements, double-counting of commissions and U.S. inland freight expenses; making of a typographical error in connection with domestic inland insurance; and failure to implement a variable for physical differences in merchandise as specified in the final results of the administrative review.

B. Germany

1. For FAG Germany, computer program's failure to eliminate FAG Germany's home market family matches where all home market sales were below cost, and the setting of some indirect selling expenses at zero; making of an adjustment for differences in merchandise for some constructed value comparisons and failure to include home market inventory carrying costs in constructed value comparisons; and addition of imputed credit costs and inventory carrying costs to FAG Germany's cost of production for the home market cost test.

2. For Pratt & Whitney Canada, Inc., application of a level of trade adjustment to home market unit prices that were adjusted for discounts and rebates rather than to Pratt & Whitney's gross price list unit prices.

3. For SKF Germany, addition (rather than subtraction) of billing adjustment # 2 to indirect selling expenses; failure to delete billing adjustment # 2 from adjusted home market price when applying the sales below cost test; and computer program's treatment of warranty and technical service expenses as both indirect and direct expenses.

C. Italy

1. For FAG Italy, inclusion of inventory carrying costs and credit expenses in the calculation of cost of production; application of an adjustment for differences in merchandise to the constructed value comparisons; exclusion of the home market indirect selling expense variable from the constructed value margin calculations; and double-counting of inventory write-offs in calculating cost of production.

2. For SKF Italy, addition (rather than subtraction) of billing adjustment # 2 to indirect selling expenses; failure to delete billing adjustment # 2 from adjusted home market price when applying the sales below cost test; and computer program's treatment of warranty and technical service expenses as both indirect and direct expenses.

D. Japan

1. For Inoue Jikuuke Kogyo Co., Ltd. ("IJK"), calculation of constructed values for particular parts using purchase price amounts that were incorrect by a factor of 100 due to a Commerce error in formatting IJK's computer tape; and computer program's failure to apply the 20 percent difference in merchandise "cap" to IJK's transactions.

2. For Koyo Seiko, computer program's failure to correctly apply the best information available value intended by Commerce for the United States sales for which Koyo Seiko failed to provide cost of production data for matching home market sales.

3. For Nachi–Fujikoshi, failure to apply the ten percent minimum for general expenses and the eight percent minimum for profit when calculating constructed value.

4. For NSK, basing of pre-sale United States inland freight upon an incorrect price; exclusion of home market indirect selling expenses from home market indirect selling expenses variable; placement of consecutive plus signs in the string of variables used to determine United States direct selling expenses; treatment of NSK's inventory carrying costs and technical service expenses as direct selling expenses rather than indirect selling expenses; fail-

ure to convert pre-sale inland freight for purchase price sales from yen to dollars, exclusion of the word "not" from a sentence found on 57 Fed.Reg. 28418 in Commerce's *Federal Register* notice (which sentence should read, "However, we agree with Torrington that NSK's early payment discounts or distributor incentives are *not* included as expenses in its COP data."); and computer program's failure to apply the 20 percent difference in merchandise "cap" to NSK's transactions.

5. For NTN, failure to convert the price variable used to calculate the level of trade adjustments from yen to dollars; and computer program's failure to apply the ten percent minimum to general, selling and administrative expenses used to calculate constructed value.

E. Sweden

1. For SKF Sweden, treatment of some selling expenses as if they were reported in Swedish Kronors when they were actually reported in Deutsche Marks; and treatment of warranty and technical service expenses as both indirect and direct expenses.

F. United Kingdom

1. For Barden Corp., addition of the United Kingdom value-added tax percentage to United States and home market prices rather than multiplification [sic] of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices.

2. For FAG U.K., addition of the United Kingdom value-added tax percentage to United States and home market prices rather than multiplification [sic] of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices; failure to apply the 20 percent difference in merchandise "cap" to the margin analysis; and failure to deduct commissions from United States price.

3. For SKF U.K., double-counting of movement expenses; treatment of warranty and technical service expenses as both indirect and direct expenses; subtraction of SKF U.K.'s "other discounts" twice from United States price; and addition of the United Kingdom value-added tax percentage to United States and home market prices rather than multiplification [sic] of the United States price by the amount of the tax percentage and then addition of the result to both United States and home market prices.

II. *Cylindrical Roller Bearings*

A. Japan

1. For NSK, exclusion of home market indirect selling expenses from the home market indirect selling expenses variable; placement of consecutive plus signs in the string of variables added to determine United States direct selling expenses; treatment of inventory carrying costs and technical service expenses as direct selling expenses rather than indirect selling expenses; and computer program's failure to apply the 20 percent difference in merchandise "cap" to NSK's transactions.

IT IS FURTHER ORDERED that the ITA will determine whether the omission of FAG Cuscinetti SpA's home market inventory carrying costs from the pool of home market indirect selling expenses subject to the ESP offset in cases where US price was compared to constructed value was a ministerial error which should be corrected; and it is further

ORDERED that if the ITA finds that it was a ministerial error, the ITA will correct the error; and it is further

ORDERED that the ITA will publish amended final results incorporating these corrections in the *Federal Register* within fifteen (15) days of the entry of this order; and it is further

ORDERED that all plaintiffs in these actions are granted leave to file amended complaints to take into account any

changes in the final results, which result from the ITA's actions pursuant to this order, within thirty (30) days of the publication of the amended final results, and all other parties will have ten (10) days to file answers to the amended complaints.

## SCHEDULE

| | |
|---|---|
| Federal–Mogul Corporation | 92–06–00422 |
| NTN Bearing Corp. of America | 92–06–00423 |
| Nippon Pillow Block Sales Co. | 92–07–00455 |
| NSK Ltd. | 92–07–00470 |
| Yamaha Motor Co. | 92–07–00471 |
| Emerson Power Transmission Corp. | 92–07–00480 |
| The Torrington Company | 92–07–00483 |
| Inoue Jikuuke Kogyo Co., Ltd. | 92–07–00484 |
| Peer Bearing Company | 92–07–00485 |
| Pratt & Whitney Canada Inc. | 92–07–00486 |
| FAG Kugelfischer Georg Schafer KGaA | 92–07–00487 |
| The Torrington Company | 92–07–00488 |
| The Torrington Company | 92–07–00489 |
| The Torrington Company | 92–07–00490 |
| The Torrington Company | 92–07–00491 |
| The Torrington Company | 92–07–00492 |
| The Torrington Company | 92–07–00493 |
| The Torrington Company | 92–07–00494 |
| The Torrington Company | 92–07–00501 |
| Nachi–Fujikoshi Corp. | 92–07–00502 |
| RHP Bearings | 92–07–00503 |
| Caterpillar Inc. | 92–07–00504 |
| Koyo Seiko Co. | 92–07–00505 |
| Federal–Mogul Corporation | 92–07–00506 |
| Federal–Mogul Corporation | 92–07–00507 |
| Federal–Mogul Corporation | 92–07–00508 |
| Federal–Mogul Corporation | 92–07–00509 |
| SKF USA, Inc. | 92–07–00513 |
| SKF USA, Inc. | 92–07–00514 |
| SKF USA, Inc. | 92–07–00515 |
| SKF USA, Inc. | 92–07–00516 |
| SKF USA, Inc. | 92–07–00517 |
| Federal–Mogul Corporation | 92–07–00518 |
| Federal–Mogul Corporation | 92–07–00519 |
| Societe Nouvelle de Roulements | 92–07–00520 |
| INA Walzlager Schaeffler KG | 92–07–00522 |