**ZENITH ELECTRONICS CORPORATION,**
Plaintiff,

v.

**The UNITED STATES, Defendant,**

**Daewoo Electronics Co., Ltd., et al.,**
Defendant–Intervenors.

Court No. 88–07–00488.

United States Court of International Trade.

Oct. 13, 1988.

Frederick L. Ikenson, P.C. (Frederick L. Ikenson, Washington, D.C., of counsel), for plaintiff.

John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C. (Velta A. Melnbrencis, Atty., Commercial Litigation Branch, New York City, and Mark J. Sadoff Atty., Office of the Chief Counsel for Import Admin., U.S. Dept. of Commerce, Washington, D.C.), for defendant.

Oppenheimer Wolff & Donnelly (David A. Gantz and Timothy A. Harr, Washington, D.C., of counsel), for defendant-intervenors Daewoo Electronics Co., Ltd., et al.

## MEMORANDUM OPINION AND ORDER

WATSON, Judge:

In this opinion the Court explains its decision that, when final administrative determinations are the subject of actions for judicial review, the Commerce Department must obtain the approval of the Court in order to make amendments to the final results. Under the authority of the All Writs Act, (28 U.S.C. § 1651) and to preserve all aspects of its jurisdiction over the pending actions, the Court issues a preliminary injunction to bar Commerce from publishing amended results to the third administrative review entitled *Color Television Receivers From Korea; Final Results of Antidumping Duty Administrative Review.*

The final results of the above-mentioned review have been contested in this and four other actions in this Court, namely, *Independent Radionic Workers of America, et al. v. United States,* Court No. 88–07–00568; *Daewoo Electronics Co., Ltd., et al. v. United States,* Court No. 88–07–00584; *Samsung Electronics Co., Ltd., et al. v. United States,* Court No. 88–07–00589; and *Goldstar Co., Ltd., et al. v. United States,* Court No. 88–07–00593.

On September 28, 1988, this Court issued a temporary restraining order barring Commerce from "rescinding, revising, or otherwise altering" the final results of the third review or from altering the cash deposit instructions issued by Commerce to the Customs Service following the final results. On September 29, following representations by plaintiff that publication of amended results was imminent, the Court

amended the restraining order to bar publication in the Federal Register. The temporary restraining order was extended for an additional ten-day period on October 8, 1988.

On October 11, 1988 the Court heard oral argument on the motion for a preliminary injunction. At that time, the Court granted a motion to intervene by Daewoo Electronics Co., Ltd., Daewoo Electronics Corporation of America, Inc., and Daewoo Corporation ("Daewoo"), the interested parties whose assertions of error following the final determination led Commerce to conclude that three ministerial errors had been made, that certain dumping margins were actually lower than had been determined, and that related cash deposit rates should be lowered from 23.30% to 15.23%.

The basic issue in this motion for a preliminary injunction is whether the Commerce Department can amend the results of a final determination while it is the subject of a court action, without obtaining the approval of the Court. A secondary issue is whether plaintiff was given a fair and reasonable opportunity to present its views regarding the asserted errors. The Court finds that basic considerations of court jurisdiction, judicial authority and judicial economy dictate that alteration of an administrative result while it is under court review cannot be done without the approval of the Court. The Court further finds that plaintiff was not given a fair opportunity to present its views regarding the asserted errors.

The need to obtain the approval of the Court in order to change the administrative result is simply a recognition of the Court's jurisdiction over the action. One of the ways in which jurisdiction is exercised is by the power of the Court over the subject matter of the action. *Cooper v. Reynolds,* 10 Wall (77 U.S.) 308, 316, 19 L.Ed. 931 (1870). When a party to a judicial action

contemplates doing anything to directly alter the subject matter of the judicial proceeding a proper regard for the authority of the Court requires that the permission of the Court be obtained.

This is a principle which governs the conduct of a Court with respect to its appellate tribunal and it should also govern the conduct of an agency which is subject to a comprehensive system of judicial review. For example, Rule 60(a) of the Federal Rules of Civil Procedure, following the ordinary grant of authority to a district court to correct its clerical errors "at any time" expressly provides that while an appeal is pending such errors may be corrected "with leave of the appellate court." This recognizes the jurisdiction and authority which the appellate tribunal has obtained over the matter.

The Commerce Department defends its intention to amend the results of the determination without the approval of the Court as a matter within its inherent authority and further, as justified by a specific provision for correction of clerical or ministerial error in 19 U.S.C. § 1675(f).[1] But this argument completely ignores the fact that the administrative authority to correct clerical errors is not absolute and does not operate in a vacuum once a judicial review has been commenced. At that point the authority of an administrative agency to correct its clerical errors must be exercised in a way that is consistent with the fundamental obligations which flow from subjection to judicial review.

Of course, the simplest case would be if the correction of clerical errors can be fairly accomplished before the necessity arises to invoke the jurisdiction of the Court. That would be a situation in which only the asserted clerical errors are in contention and correcting them might completely obviate the need for bringing an action in Court. This was the basic reason for the

---

**1.** "(f) Correction of Ministerial Errors,—The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section. Such procedures shall ensure opportunity for interested parties to present their views regarding any such errors. As used in this subsection, the term 'ministerial error' includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial."

provision in 19 U.S.C. § 1675(f) requiring Commerce to "establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued...." *See*, H.Rep. 100-40, Part 1, 100th Cong. 2nd Sess. 144. But even that simple state of affairs must operate under the unavoidable condition that under 19 U.S.C. § 1516a, an interested party has only 30 days within which to bring an action for judicial review of any determination, finding, or conclusion in the final determination. It is likely therefore, that in many cases, even when a party is only seeking correction of alleged ministerial or clerical errors it will have to start an action in court before the 30-day statute of limitation expires so as not to lose the protection of that action against a possible adverse result of the administrative correction process. Still more often, as here, the alleged ministerial errors will be part of a more complex dispute whose central issues cannot be resolved except by judicial decision. Once the final determination becomes the subject of an action in court, one way or another, allowing Commerce to take independent steps to alter the determination is in conflict with the authority of the Court.

This does not mean that Commerce cannot continue the process of identifying ministerial errors while a judicial proceeding is underway. But it does mean, that in order to effectuate corrections in a way that acknowledges the jurisdiction of the Court over the underlying determination and in order to give the Court its proper authority over the question of whether the corrections should be made and, if so, how judicial review should be conducted thereafter, Commerce must apply to the Court for permission to make amendments to the final determinations.

The potential for disruption if this salutary procedure is not followed was demonstrated in *NTN Bearing Corp. v. United States*, 684 F.Supp. 1093 (CIT 1988). In that case actions challenging the dumping determination by Commerce and the injury determination by the International Trade Commission were affected when, after the commencement of the actions, Commerce independently amended its final determination and the antidumping duty order to find lower dumping margins. The government took the position, in opposing plaintiff's motion to amend its complaints to meet the substance and effect of the amended result, that plaintiff had to bring an entirely new action. The Court, choosing the lesser of two evils, allowed the amendment of the original complaints but the predicament it faced demonstrated the potential disruptive consequences of agency alterations of matters which are *sub judice*. The events of that case strongly suggest that untoward complications could have been avoided and new developments could have been smoothly integrated into the ongoing court action if the agency had submitted the desired amended result to the court for approval before it was published. The existence of a mandatory requirement that it do so was evidently not raised in that case.

As to the question of whether plaintiff had the opportunity to present its views as required by 19 U.S.C. § 1675(f), the affidavit of counsel for plaintiff leads the Court to conclude that it did not. Commerce is evidently in the process of developing procedures to comply with the mandate of § 1675(f) and it does not appear that counsel for plaintiff had sufficient time and access to the relevant material to make a meaningful response.

On the subject of possible administrative procedures in this area, the Court notes once again (so that its decision here is not seen as barring Commerce from identifying necessary corrections or forcing it to act within a highly restrictive period of time), that it is entirely conceivable that the correction procedure can extend into the period of judicial review. In fact, a logical standard for deciding whether the errors found can be corrected in the "reasonable time" set by § 1675(f) would be whether, in a determination which has become subject to judicial review, the application to the Court for permission to make the corrections can be made in time to allow a harmonious incorporation of the corrections into the process of judicial review.

The Court also notes that although the impairment of the Court's jurisdiction, by itself, is sufficient to support the injunctive relief requested there is also an element of irreparable injury to plaintiff in that it has not been given the benefit of adequate procedural safeguards and consequently faces the prospect that the cash deposit rates required of someone who has been found to be dumping and causing injury will be lowered in a manner which is not in accordance with law. It is clear that Congress looked on the requirement of cash deposits as a meaningful part of the reduction of damage to the domestic industry. *See* S.Rep. 96–249, 96th Cong., 1st Sess. 76, U.S.Code Cong. & Admin.News 1979, pp. 381, 462. Be that as it may, the impairment of the Court's jurisdiction is the primary ground of injunctive relief in this action.

Upon consideration of the motion of plaintiff, Zenith Electronics Corporation, all responses thereto, and all other papers and pleadings had herein, the Court makes the following findings of fact:

(1) that plaintiff commenced this action to secure judicial review of the determination by the United States Department of Commerce ("Commerce") of the final results of Commerce's administrative review of the antidumping duty order on color television receivers from Korea ("Final Results") and the requirements based thereon for cash deposit of estimated antidumping duties, which Final Results were published on July 1, 1988 (53 Fed.Reg. 24975);

(2) that said Final Results are the subject matter of this litigation and that the Court's jurisdiction over the Final Results has attached; and

(3) that, unless prevented from so doing, it is apparent that Commerce intends to and will unilaterally alter the Final Results and cash deposit requirements based thereon.

On the basis of the foregoing, the Court reaches the following conclusions of law;

(1) that any unilateral alteration of the Final Results by Commerce would impair this Court's jurisdiction over the Final Results which are the subject matter of this litigation;

(2) that any unilateral alteration by Commerce of the Final Results and the cash deposit requirements based thereon would result in immediate and irreparable harm to plaintiff;

(3) that issuance of a preliminary injunction will not harm the defendant; that such temporary hardship as intervenor Daewoo may endure as a result of its issuance is outweighed by the factors of impairment of this Court's jurisdiction and injury to plaintiff; and

(4) that the public interest, which would not be served by any alteration of the Final Results without specific authorization from this Court, will best be promoted by the Court's preservation of the *status quo.*

For the foregoing reasons, the Court concludes that, in order to aid and preserve this Court's jurisdiction, it is necessary and appropriate to prevent any alteration of the Final Results from being undertaken without the authorization and approval of this Court, and it is hereby

ORDERED that plaintiff's motion for a preliminary injunction with regard to the determination contested in this civil action (i.e., "Color Television Receivers From Korea; Final Results of Antidumping Duty Administrative Review," published July 1, 1988, at 53 Fed.Reg. 24975) ("the Final Results") be, and the same hereby is, granted; and it is further hereby

ORDERED that the defendant herein, together with its delegates and all other officers, agents, servants and employees of the United States Department of Commerce, including Commerce officers Jan W. Mares, Assistant Secretary of Commerce for Import Administration, Timothy N. Bergan, Deputy Assistant Secretary of Commerce for Import Administration, and Joseph A. Spetrini, Deputy Assistant Secretary of Commerce for Compliance, be, and the same hereby are, enjoined from rescinding, revising, or otherwise altering the said Final Results; and it is further hereby

ORDERED that the defendant herein, together with its delegates and all other

**300**

officers, agents, servants and employees of the United States Department of Commerce, including the aforenamed Commerce officers, be, and the same hereby are, enjoined from rescinding, revising, or otherwise altering the instructions issued by Commerce (under cover of memorandum from Holly A. Kuga, dated July 12, 1988) to the United States Customs Service concerning the cash deposits of estimated antidumping duties, based upon the Final Results, to be required on shipments of Korean color television receivers entered, or withdrawn from warehouse, for consumption on or after July 1, 1988, and prior to publication of the final results of any administrative review of the antidumping duty order subsequently conducted and completed by Commerce; and it is further hereby

ORDERED that this injunction shall remain in effect during the pendency of this litigation or until such earlier time as this Court determines that the defects it has found in the proposed amendment of the Final Results have been remedied, that the amendment of the Final Results is appropriate and the Court specifically authorizes and approves such amendment.