### KERR–McGEE CHEMICAL CORP., et al.; Plaintiffs,

### v.

### UNITED STATES, Defendant,

**China Hunan International Economic Development (Group) Corporation, China Metallurgical Import & Export Hunan Corporation, and Minmetals Precious & Rare Minerals Import & Export Corporation, Defendant–Intervenors.**

Slip Op. 97–2.
Court No. 96–02–00397.

United States Court of
International Trade.

Jan. 8, 1997.

Gardner, Carton & Douglas (W.N. Harrell Smith IV, George N. Grammas), Washington, DC, for Plaintiffs Kerr–McGee Chemical Corporation and Elkem Metals Company.

Frank W. Hunger, Assistant Attorney General of the United States; David M. Cohen, Director, Jeanne E. Davidson, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Randi–Sue Rimerman), David J. Ross, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Counsel, Washington, DC, for Defendant.

Dorsey & Whitney (Munford Page Hall, II, Philippe M. Bruno), Washington, DC, for

Defendant-Intervenors China Hunan International Economic Development (Group) Corporation, China Metallurgical Import & Export Hunan Corporation, and Minmetals Precious & Rare Minerals Import & Export Corporation.

**OPINION**

CARMAN, Chief Judge:

Before this Court is plaintiffs' Motion to Settle the Record. Plaintiffs request this Court direct the Department of Commerce ("Department" or "Commerce") to restore to the administrative record plaintiffs' submissions of November 17, 1995, which consist of certain formulae and data related to the adjustment of the surrogate manganese ore chosen by Commerce for direct process chemical usage. Plaintiffs' submissions were redacted by Commerce because they allegedly contained new factual information and were not timely. Defendant and defendant-intervenors oppose plaintiffs' motion and claim ordering Commerce to include the contested documents in the administrative record would violate their due process rights. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1581(c) (1988), and for the reasons set forth below, denies plaintiffs' Motion to Settle the Record.

**BACKGROUND**

Plaintiffs, Kerr–McGee Chemical Corporation and Elkem Metals Company ("Kerr–McGee"), produce manganese metal in the United States. Plaintiffs filed a petition on November 8, 1994 on behalf of the United States manganese metal industry arguing Chinese companies were dumping manganese metal. Defendant-intervenors, China Hunan International Economic Development (Group) Corporation, China Metallurgical Import & Export Hunan Corporation, and Minmetals Precious & Rare Minerals Import & Export Corporation, are located in the People's Republic of China ("PRC") and export the subject merchandise to the United States.

The PRC is a non-market economy country. In antidumping investigations involving non-market economies, the Department is re-

quired to calculate foreign market value based on information regarding the factors of production in a surrogate market economy. The statute states if the merchandise subject to an antidumping investigation is exported from a non-market economy, and "the administering authority finds that available information does not permit the normal value of the subject merchandise to be determined," 19 U.S.C. § 1677b(c)(1)(B) (1994), Commerce "shall determine the normal value of the subject merchandise on the basis of the value of the factors of production utilized in producing the merchandise." 19 U.S.C. § 1677b(c)(1) (1994). The statute requires Commerce, in valuing the factors of production, to "utilize to the extent possible, the prices or costs of factors of production in one or more market economy countries that are (A) at a level of economic development comparable to that of the nonmarket economy country, and (B) significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(4) (1994). The factors of production utilized in producing merchandise are defined to include hours of labor required, quantities of raw materials employed, amounts of energy and other utilities consumed and representative capital cost, including depreciation. *See* 19 U.S.C. § 1677b(c)(3) (1994). Plaintiffs proposed India be used as the surrogate country for valuing the factors of production for the antidumping investigation, because although no comparable market economy produces manganese metal, India is a country of comparable economic development to the PRC and is a significant producer of merchandise comparable to manganese metal.

Prior to the preliminary determination, Commerce considered five ores as possible surrogates for manganese ore produced in China. In evaluating the five surrogate ores, Commerce considered the Indian ores' export and domestic prices. The five potential surrogates were (1) a price submitted by plaintiffs for low ferruginous peroxide ore

(82–84 percent $MnO_2$)[1] ("ore 1"); (2) a price submitted by defendant-intervenors for metallurgical grade manganese ore (30–35 percent Mn) from the *1993 Indian Minerals Yearbook* ("ore 2"); (3) an export price obtained by the Department for low-grade manganese ore (26–28 percent Mn content) based on an actual transaction price from the July 7, 1992 issue of the TEX Report,[2] reporting the price agreed to in a contract between an Indian mine and two Japanese purchasers for 25,000 tons of manganese ore ("ore 3"); (4) a basket price based on grades of ore with a 30–35 percent manganese content obtained by the Department from the *Indian Export Statistics* ("ore 4"); and (5) an average price obtained by Commerce for total Indian production of manganese ore, not differentiated by grade, during 1991–92, from the *1993 Indian Minerals Yearbook* ("ore 5") (Def.'s Chron. of Events ("Def.'s Chron.") at 1–2; Pls.' Chron. at 13.)[3]

In a letter to the Department dated March 20, 1995, defendant-intervenors suggested ore 2 as a possible surrogate for manganese ore produced in China. On April 12, 1995 and again on May 23, 1995, plaintiffs responded to and challenged defendant-intervenors' submissions advocating ore 2 as a surrogate. Plaintiffs argued "the price reported for the 'metallurgical grade' ore cannot be used as a surrogate" because ore 2 "has an insufficient or inadequate manganese-to-iron ratio and is not comparable to ore used in manganese metal production in the PRC." (App. to Pls.' Mem. in Supp. of Mot. to Settle R. ("Pls.' App.") tab 9 at 3.) Plaintiffs cited to the affidavit of chemist and metallurgist Dr. J.C. Agarwal, who reviewed defendant-intervenors' March 17, 1995 submission to Commerce. Dr. Agarwal concluded "[b]ecause the reported 'metallurgical grade' ore is used only in pig iron applications in India and priced as a premium iron ore, its price cannot be used as a surrogate for the price of manganese ore in China." (Pls.' App. tab 9, attach. 1; Agarwal Aff. at

---

1. Mn is the symbol for the element manganese. $O_2$ is the symbol for the element oxygen.

2. The TEX Report is a trade periodical.

3. At the conclusion of a telephone conference on November 15, 1996, this Court requested the parties compile a chronology of events comprising the administrative proceeding to assist the Court in ruling on plaintiffs' Motion to Settle the Record.

10.) Plaintiffs did not notify Commerce ore 2 could be used if certain adjustments were made, but instead argued Commerce should use ore 1. On June 2, 1995, defendant-intervenors responded once again that ore 2 was the most suitable surrogate because it most closely resembled the Chinese manganese ore. Defendant-intervenors argued the manganese content of ore 2 more closely matched the Chinese ore than the ore proposed by the plaintiffs.

On June 14, 1995, Commerce published its preliminary determination, choosing as its surrogate the export price for ore 3 obtained by the Department for low-grade manganese ore (26–28 percent Mn content) based on an actual transaction price from the July 7, 1992 issue of the TEX Report. *See Notice of Preliminary Determination of Sales at Less Than Fair Value and Postponement of Final Determination: Manganese Metal From the People's Republic of China*, 60 Fed.Regs. 31,282, 31,285 (Dept.Comm.1995) (*prelim.determ.*) Following Commerce's publication of its preliminary determination, plaintiffs requested Commerce ascertain, during verification, the manganese-to-iron ratios of the manganese ore used by the Chinese producers in producing manganese metal. Commerce obtained the requested ratios and, on September 19, 1995, relayed them to Kerr–McGee.

On November 6, 1995, Commerce published the final determination which found imports of manganese metal from the People's Republic of China are being, or are likely to be, sold at less than fair value in the United States. *See Notice of Final Determination of Sales at Less Than Fair Value: Manganese Metal From the People's Republic of China*, 60 Fed.Reg. 56,045 (Dept.Comm.1995) (*final determ.*) In the final determination, as a surrogate for manganese ore used in China, Commerce chose ore 2, the price for metallurgical grade manganese ore (30–35 percent Mn) from the *1993 Indian Minerals Yearbook* submitted by defendant-intervenors, instead of ore 3, which was used as the surrogate ore in the preliminary determination. *Id.* at 56,047. In the final determination, Commerce noted ore 2 "has a manganese content that is comparable to the ore

used by the PRC producers and also represents a domestic price in India. We adjusted the value of the manganese ore to reflect a delivered price." *Id.*

On November 17, 1995, Kerr–McGee submitted to Commerce "corrections to the final dumping margin calculations," pursuant to 19 C.F.R. § 353.28 (1994), which allegedly identified "ministerial errors" made by Commerce in the final determination. (Pls.' App. tab 28.) Kerr–McGee argued it was "*technically* infeasible, as a matter of basic chemistry, to use the Department's surrogate ore" without "adding a reduction process and correcting for the direct process chemical usage," and it submitted adjustment formulae for Commerce to apply in making the alleged necessary adjustments. (Pls.' App. tab 28 at 2.) Plaintiffs argued Commerce erred when it adopted in its final determination an ore which is significantly less expensive than and chemically dissimilar to Chinese ore.

After publication of the final determination, Commerce made no adjustments for direct process chemical usage. Commerce noted in its amended final determination that it considered certain arguments raised by plaintiffs to be non-ministerial, and stated its choice and application of a specific surrogate manganese ore value does not qualify as a "clerical error." Commerce concluded plaintiffs' submissions constituted "untimely-filed new information" and accordingly "removed the information submitted by petitioners ... from the record." *Notice of Amended Final Determination and Antidumping Duty Order: Manganese Metal From the People's Republic of China*, 61 Fed.Reg. 4,415, 4,416 (Dept.Comm.1996) (*am. final determ.*). Commerce explained:

> We agree with respondents that petitioners' claim is not a clerical error pursuant to 19 C.F.R. 353.28(d). Furthermore, the information supporting petitioners' clerical error allegation represents untimely-filed new information. Accordingly, the Department has not considered this issue and has removed the information submitted by petitioners in support of this argument, as well as respondents' rebuttal to

this information, from the record (*see* 19 C.F.R. 353.31(a)(3)).

61 Fed.Reg. at 4,416.

Plaintiffs move this Court to supplement the administrative record by restoring the redacted portion of plaintiffs' submissions so reference can be made to the information they contain when the administrative determination is reviewed on the merits.

## CONTENTIONS OF THE PARTIES

### A. *Plaintiffs*

Plaintiffs argue their submissions alleging ministerial errors were not only relevant, but absolutely vital and were timely presented to the Secretary during the course of the administrative proceeding, pursuant to 19 C.F.R. § 353.28(a), which addresses "[p]rocedures for the correction of ministerial errors" and provides "[a] party to whom the Secretary has disclosed final calculations may submit comments concerning any ministerial errors in such calculations." 19 C.F.R. § 353.28(a) (1994). Plaintiffs assert, "[t]here is absolutely no factual information contained in the calculations" submitted. (Pls.' Mem. in Supp. of Mot. to Settle R. ("Pls.' Memo") at 35.) In addition, plaintiffs argue the defendant admitted " 'the raw data to which Kerr–McGee applied its formulae may have been contained in the verification reports.' " (Pls.' Reply to Def.'s Mem. in Opp'n ("Pls.' Reply") at 15 (quoting Def.'s Memo at 15).)

Plaintiffs' submissions included formulae and algebraic adjustments which plaintiffs claimed were "merely an algebraic manipulation" necessary to account for the chemical differences between the newly-selected, reference ore from India and the Chinese ore actually used by respondents. (Pls.' Memo at 35). Plaintiffs, quoting one of their submissions to Commerce, argue "[i]f the Department continues with the selected surrogate ore, it must at a minimum adjust the direct process chemical usage to accommodate the higher iron content in the ore" because " 'as the percentage of iron in the ore increases, greater amounts of reagents (*ie*, chemicals) must be used in the solution making phase' . . . . By contrast, the Chinese ore does not require any material increase in process chemicals, because it has a low iron content and the [ ] content is readily released in the process." (Pls.' Memo at 34–35 (citations omitted).) Plaintiffs argue Commerce's failure to make adjustments for the costs that necessarily would be incurred to reduce the ore and remove the iron and heavy metals, as is required in the production of manganese metal, constitutes an error. (Compl. at 4.)

Plaintiffs contend they will challenge in their case-in-chief the Department's finding their submissions proposed non-ministerial corrections if their Motion to Settle the Record is denied, but they argue there is no way the Court can evaluate the proposed corrections if they are not part of the record. Additionally, plaintiffs argue even if their submissions are determined to allege non-ministerial errors, the Department has the authority to elect not to make the corrections, but does not have the authority under its regulations to redact the submission from the record.

### B. *Defendant*

Defendant argues plaintiffs' submissions do not identify clerical or ministerial errors, but rather contain untimely-filed new information whose consideration at this point in the case would reopen the record and violate defendant's and defendant-intervenors' due process rights. Defendant argues it is well-settled the administrative record for judicial review of an administrative determination is limited to information before the agency at the time the final determination was made. Comments received after the final determination may pertain only to ministerial errors in the final determination. Defendant states "Kerr–McGee neglected to file the documents at issue . . . until after Commerce published the final determination containing the ore surrogate that Kerr–McGee now contests." (Def.'s Mem. in Opp'n to Pls.' Mem. in Supp. of Mot. to Settle R. ("Def.'s Memo") at 2–3.) Defendant then continues to conclude "[b]ecause the information redacted from the contested documents relates to non-ministerial arguments, it was not properly part of the administrative record and Com-

merce appropriately redacted it." (Def.'s Memo at 12.)

Defendant contests plaintiffs' claim that the redacted portions of their submissions did not contain new factual information. Defendant relies upon 19 C.F.R. § 353.31(a)(3), which states "[t]he Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit." 19 C.F.R. § 353.31(a)(3) (1994). Defendant argues the information submitted by plaintiffs plainly consists of factual information and not technical or clerical corrections, and that plaintiffs missed the deadline for submitting new factual information.[4]

Defendant adds Kerr–McGee had ample time to submit the information contained in the contested documents because the surrogate ore Commerce used in the final determination was first suggested by defendant-intervenor China Hunan in its March 17, 1995 questionnaire response. (Def.'s Memo at 17) Therefore, defendant argues Kerr–McGee was on notice ore 2 might be used as the surrogate ore and should have notified Commerce ore 2 would need to be adjusted if chosen. Defendant argues Kerr–McGee was not entitled to rely on Commerce's using the same surrogate ore in the final determination as it used in the preliminary determination.

Finally, defendant argues Kerr–McGee is attempting to litigate prematurely the underlying merits of Commerce's choice of surrogate for Chinese manganese ore. Defendant claims arguments challenging the appropriateness of Commerce's choice of surrogate ore go to the merits of the case and should not be addressed by the Court at this time. Defendant concludes Commerce's determination to redact the submissions is supported by substantial evidence on the record and therefore, plaintiffs' motion should be denied.

4. Defendant also argues Kerr–McGee could have relied on an exception contained in 19 C.F.R. § 353.31(a)(2), which states any interested party may submit factual information "to rebut, clarify, or correct factual information submitted by an interested party ... 10 days after the date such factual information is served on the interested party." 19 C.F.R. § 353.31(a)(2) (1994). Alter-

## STANDARD OF REVIEW

In reviewing challenges to administrative reviews, this Court sustains final determinations made by Commerce unless they are found to be "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i) (1994). "Substantial evidence is something more than a 'mere scintilla,' and must be enough reasonably to support a conclusion." *Ceramica Regiomontana, S.A. v. United States,* 10 CIT 399, 405, 636 F.Supp. 961, 966 (1986) (citations omitted), *aff'd,* 5 Fed. Cir. (T) 77, 810 F.2d 1137 (1987). For purposes of judicial review, the evidence before this Court is limited to the evidence contained in the administrative record. *See Neuweg Fertigung GmbH v. United States,* 16 CIT 724, 726, 797 F.Supp. 1020, 1022 (1992). The question before this Court is, therefore, whether Commerce complied with the statute defining the administrative record for review in redacting plaintiffs' submissions from the administrative record. This Court must determine whether Commerce's determination is supported by substantial evidence and is otherwise in accordance with law.

## DISCUSSION

### I. *The Administrative Record*

Plaintiffs argue 19 U.S.C. § 1516a(b)(2) requires the redacted portion of their submissions be part of the administrative record. The statute defines the administrative record for review to consist of

(i) a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission *during the course of the administrative proceeding,* including all governmental memoranda pertaining to the case and the record of ex parte meetings required to be

natively, defendant adds Kerr–McGee could have requested leave to submit the adjustments after verification pursuant to 19 C.F.R. § 353.31(b)(1), which permits Commerce to request the submission of information at any time during a proceeding. However, as defendant notes, "Kerr–McGee did neither." (Def.'s Chron. at 4.)

kept by section 1677f(a)(3) of this title; and

  (ii) a copy of the determination, all transcripts or records of conferences or hearings, and all notices published in the Federal Register.

19 U.S.C. § 1516a(b)(2)(A) (1994) (emphasis added).[5] Congress shed light on the meaning of the phrase "during the course of the administrative proceeding" when it stated:

  *Scope and Standard of Review.*—Judicial review of determinations subject to the provisions of subsection (a)(1) would proceed *upon the basis of information before the relevant decision-maker at the time the decision was rendered* including any information that has been compiled as part of the formal record. The court is not to conduct a trial *de novo* in reviewing such determinations.

S.Rep. No. 96–249 at 247–48 (1979), *reprinted in* 1979 U.S.C.C.A.N. 381, 633 (emphasis added).

The same statutory language has been interpreted by this Court to mean that, barring exceptional circumstances, "[t]he scope of the record for purposes of judicial review is based upon information which was 'before the relevant decision-maker' and was presented and considered 'at the time the decision was rendered.'" *Beker Industries Corp. v. United States,* 7 CIT 313, 315, 1984 WL 3727 (1984). *See also Neuweg Fertigung GmbH v. United States,* 16 CIT 724, 726, 797 F.Supp. 1020, 1022 (1992) (citations omitted) ("The case law of this court is very clear that the administrative record 'is limited to the information that was presented to or obtained by the agency making the determination during the particular review proceeding for which section 1516 authorizes judicial review.' 'Any information received by [the ITA] after the particular determination at issue is not part of the reviewable administrative record.'"); *Win–Tex Products, Inc. v. United States,* 16 CIT 760, 763, 797 F.Supp. 1025, 1026 (1992) (citations omitted) ("'[R]eview of agency determinations in antidump-

ing proceedings is to be undertaken upon the basis of the record made before the agency.'"); *Rhone Poulenc, Inc. v. United States,* 13 CIT 218, 222, 710 F.Supp. 341, 345 (1989) (CIT rejected plaintiffs' attempt to supplement record with materials from record of separate administrative review arising out of same antidumping duty order because "[j]udicial review of an administrative review of an antidumping duty order is confined to information contained in administrative record"); *PPG Industries, Inc. v. United States,* 13 CIT 183, 708 F.Supp. 1327 (1989) (judicial review is limited to evidence contained in the administrative record); *Melamine Chemicals, Inc., v. United States,* 2 CIT 113, 1981 WL 2484 (1981); *Nakajima All Co., Ltd. v. United States,* 2 CIT 25, 1981 WL 2478 (1981).

Plaintiffs argue, however, this Court has construed 19 U.S.C. § 1516a(b)(2) to require the inclusion of relevant information in the record for review, even though the information was submitted untimely. Plaintiffs cite *Suramerica de Aleaciones Laminadas v. United States,* 14 CIT 366, 373–74, 1990 WL 86406 (1990), *vacated (on other grounds),* 14 CIT 560, 746 F.Supp. 139 (1990), *and rev'd and remanded,* 966 F.2d 660 (Fed.Cir.1992), *and remanded,* 17 CIT 146, 818 F.Supp. 348 (1993), *and opinion after remand* 17 CIT 776, 841 F.Supp. 1220 (1993), *and aff'd,* 44 F.3d 978 (Fed.Cir.1994) to support this argument. In *Suramerica,* this Court ordered certain information, which the International Trade Commission ("ITC" or "Commission") rejected as untimely, to be included in the administrative record. In *Suramerica,* this Court held the ITC could not accept the defendant-intervenor's Post–Hearing Brief on the last day of its filing deadline and not allow the plaintiff to submit a rebuttal of the allegations made by the defendant-intervenor in its brief and relied upon by the Commission in the final determination.

■ Although the Court did order the inclusion of untimely-filed information in the administrative record, this Court does not

---

**5.** Rule 71(a) of the rules of this Court tracks the language of 19 U.S.C. § 1516a(b)(2)(A) (1994) and requires Commerce to file with the Clerk of the Court the information set out by 19 U.S.C.

§ 1516a(b)(2)(A) in actions falling within the jurisdictional provisions contained in 28 U.S.C. § 1581(c) or (f).

read *Suramerica* to stand for the proposition that all relevant information, whether timely submitted or not, must be included in the administrative record. As this Court noted in *Suramerica*, "[r]elevance and usefulness, alone, however, are not sufficient to render the information appropriate for consideration by the Court in its deliberations. The crucial question is whether the information should be deemed part of the statutorily defined 'record for review' upon which the Court's determination must be based." *Suramerica*, 14 CIT at 372. Although plaintiffs point to *Suramerica* as their case-in-chief in support of their Motion to Settle the Record, this Court finds *Suramerica* is distinguishable from the instant case, where plaintiffs presented their submissions to Commerce after the final determination and where plaintiffs had substantial opportunity earlier in the proceeding to present their submissions in a timely manner.

Moreover, this Court notes legal precedent clearly supports defendant's position. In *Mitsuboshi Belting Ltd. v. United States*, 18 CIT 98, 1994 WL 46910 (1994), for example, the Court rejected plaintiffs' attempt to supplement the administrative record because

> plaintiffs had an opportunity to submit information contained in the records of prior proceedings during the review in question but did not do so. This failure, standing out now on its own, cannot be equated with an "exceptional" or "rare" circumstance. Rather, it simply reflects a tactic of plaintiffs' own design, one for which they must now bear sole responsibility.

*Mitsuboshi Belting*, 18 CIT at 103 (citations omitted). Similarly, whether or not the defendant in this case is correct in suggesting "[i]t is possible that Kerr–McGee feared Commerce would be more likely to accept China–Hunan's suggested ore surrogate if it had Kerr–McGee's adjustment formulae before it," Kerr–McGee chose not to present the information at issue to Commerce "during the course of the administrative proceeding" as defined by 19 U.S.C. § 1516a(b)(2) and it must bear responsibility for this choice. (Def.'s Memo at 19.) As the defendant stated, "to the extent Kerr–McGee was prejudiced by the omission of this informa-

tion from the record, the prejudice was of its own making." (*Id.* at 16.)

Furthermore, this Court notes the Court's statement in *Böwe–Passat, et al., v. United States*, 17 CIT 335, 338, 1993 WL 179269 (1993), that " [t]he plain language of section 353.31 indicates that Commerce does not have the discretion to accept untimely information." While the Court also recognized "Commerce does accept information despite these regulations," it noted "the burden on the party attempting to submit untimely information remains high indeed." *Böwe–Passat*, 17 CIT at 338. This Court holds plaintiffs have not met that high burden in this case.

In *Seattle Marine Fishing Supply Co. v. United States*, 12 CIT 60, 679 F.Supp. 1119 (1988), this Court held the ITA properly refused to consider untimely-submitted information and instead relied on the best information otherwise available. The Court held the rejection of the exporter's untimely-submitted information did not deny due process despite plaintiff's claim there was still sufficient time to allow the ITA to verify the information. *See also NSK Ltd. v. United States*, 16 CIT 745, 750, 798 F.Supp. 721, 725 (1992) (ITA justified in rejecting submitted factual information as untimely); *Asociacion Colombiana de Exportadores de Flores v. United States*, 13 CIT 13, 24, 704 F.Supp. 1114, 1124 (1989) (ITA justified in refusal to consider untimely-submitted "ambiguous" information; parties must submit data promptly); *Star–Kist Foods, Inc., v. United States*, 8 CIT 305, 600 F.Supp. 212 (1984) (plaintiff's motion to supplement administrative record denied because although contested documents were relevant to administrative proceeding below, they were never presented to or obtained by the Commerce Department during its investigation).

For the above reasons, this Court rejects Kerr–McGee's motion. The Court notes both plaintiffs and defendant recognized ore 2 as one of the five ores initially considered by the Department in the preliminary determination. (Def.'s Chron. at 1; Pls.' Chron. at 13.) The Court also notes defendant-intervenors' submissions of March 20, 1995 and June 2, 1995, both of which advocated using

ore 2 as the surrogate ore, certainly put the parties on notice that ore 2 was a possible surrogate. In addition, the Court points to Kerr–McGee's responses on April 12, 1995 and May 23, 1995, challenging the use of ore 2 and arguing for the use of ore 1. Plaintiffs' submission of April 12, 1995 also includes Dr. J.C. Agarwal's affidavit which references and rebuts defendant-intervenors' selection of a metallurgical grade manganese ore (ore 2). Finally, the Court notes Commerce's Concurrence Memorandum of October 18, 1995, which states with respect to the selected surrogate ore:

> Petitioners argue that this particular price cannot be used as a surrogate because the low manganese-to-iron ratio indicates that the value of the ore is based on its iron content, not its manganese content.... Petitioners' analysis of the "metallurgical grade" ore is consistent with information the Department obtained from the manganese expert at the U.S. Bureau of Mines....

(Pls.' App. tab 25 at 4–5.)

This Court finds the administrative record provides ample evidence Commerce was considering ore 2 as one option for the surrogate for Chinese manganese ore from the outset of the antidumping investigation. Therefore, Kerr–McGee, unlike the plaintiff in *Suramerica*, had sufficient opportunity to present the contested information well before Commerce reached its final determination. Although Kerr–McGee argues "this [November 17, 1995] is the first opportunity for Petitioners to comment on the inappropriate surrogate selection," (Pls.' App. tab 28 at 5), this Court finds Kerr–McGee clearly had notice Commerce was considering ore 2 as a possible surrogate long before Commerce changed the surrogate ores between the preliminary and the final determination.[6] While Kerr–McGee argues it could only have clarified the technical problems created by using ore 2 as a surrogate "had the Department procedurally raised these issues at a time when Petitioners would have had an opportunity to respond," the Court believes plaintiffs had such an opportunity in their various submissions throughout Commerce's antidumping investigation. (Pls.' App. tab 28 at 4.) As a result, this Court also rejects Kerr–McGee's claims that (1) "[t]he problem is that the new dispositive 'facts' underlying the final determination were drawn by the Department from unidentified sources outside the record after the record had closed and the 'facts' were disclosed to parties only after the final determination," (Pls.' Chron. at 20.) and that (2) "the ore selected was not advocated by Respondents or suggested as a possible surrogate by the Department at any point in the investigation." (Pls.' App. tab 28 at 2.) Accordingly, this Court sustains Commerce's argument that plaintiffs, by failing to raise the adjustment issue and present the allegedly necessary data and formulae to Commerce in a timely manner, deprived both Commerce and defendant-intervenors of the opportunity to evaluate and respond to plaintiffs' submissions during the administrative proceeding and to consider "whether the necessity of adjusting ore 2 made it a less desirable surrogate." (Def.'s Chron. at 2.) As Commerce stated:

> Nothing prevented Kerr–McGee, prior to the preliminary determination, from alerting Commerce to its position that ore

---

**6.** In *Tehnoimportexport v. United States*, 15 CIT 250, 766 F.Supp. 1169 (1991), this Court recognized there is "no obligation on the part of [Commerce] to notify the parties beforehand that there would be a different surrogate used in the final determination than in the preliminary determination." *Tehnoimportexport*, 15 CIT at 255, 766 F.Supp. at 1175. In *Tehnoimportexport*, the ITA changed the country selected as the surrogate in the final determination from the country it had selected in the primary determination without giving the parties notice that it intended to switch surrogates. This Court stated "[t]he reason for having both preliminary and final determinations is so the ITA can make corrections and adjustments to its preliminary findings and reach a more accurate conclusion in the final determination. Some changes are to be expected...." *Id.* In *Tehnoimportexport*, this Court found the ITA had explained to the parties in the preliminary determinations that additional fact finding as to the surrogate country would be necessary prior to the final determinations and held plaintiff was aware that a country other than its own choice might be selected as the surrogate in the final determinations. Similarly, Kerr–McGee, like the plaintiff in *Tehnoimportexport*, was aware from the beginning of the investigation that Commerce was considering five possible ores as options for its choice of surrogate and that Commerce might select a different surrogate ore in the final determination.

2 would need to be adjusted if it were chosen, and from providing Commerce with the relevant adjustment formulae so that the necessary ratios could be obtained during verification and the adjustments could then be performed.

·(*Id.* at 3.)

Because Kerr–McGee did not submit the contested documents to Commerce until after the final determination, despite its being on notice that ore 2 might be chosen as a surrogate, this Court holds the redacted portions are not part of the administrative record as defined by 19 U.S.C. § 1516a(b)(2). Kerr–McGee cannot, at this late juncture, circumvent the statutory rules on post-final determination submissions by submitting new factual information that was not before the agency at the time it made its final determination under the guise of submitting "ministerial errors." The record for review is clearly defined by statute in 19 U.S.C. § 1516a(b)(2) and the documents and information plaintiffs seek to add to the administrative record do not fall within that definition. *See, e.g., Beker Industries Corp. v. United States,* 7 CIT 313, 318, 1984 WL 3727 (1984). There are no extraordinary reasons in this case which would warrant disregard of the normal principles regarding the composition of the administrative record for review. Rather, granting plaintiffs' motion at this late juncture would force Commerce to reopen the record, consume scarce judicial time and resources, and would unduly prejudice and violate the due process rights of the defendant and defendant-intervenors. Accordingly, this Court denies plaintiffs' Motion to Settle the Record.

## II. *Ministerial Error Argument*

■ Kerr–McGee also argues Commerce should not have redacted its submissions on the ground the submissions identified ministerial errors made in the final determination. The statute allows "interested parties" to "present their views" regarding "ministerial errors in final determinations." 19 U.S.C. § 1673d(e) (1994). The regulations promulgated pursuant to the statute set out the "[p]rocedures for the correction of ministerial errors," allowing parties to "submit comments concerning any ministerial errors" in the calculations and commanding the Secretary to "analyze any comments received and, if appropriate, correct any ministerial errors by amending the final antidumping determination or final results of administrative review." 19 C.F.R. § 353.28(a), (c) (1994). The term "ministerial error" is defined in the regulation as "an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the Secretary considers ministerial." 19 C.F.R. § 353.28(d) (1994).

This Court holds Commerce acted properly when it redacted plaintiffs' submissions on the ground they did not identify ministerial errors, but rather raised new factual information. "Factual information" is defined by the regulations as "(1) Initial and supplemental questionnaire responses; (2) Data or statements of fact in support of allegations; (3) Other data or statements of fact; and (4) Documentary evidence." 19 C.F.R. § 353.2(g) (1994). Section 353.31 establishes time limits for the submission of factual information and states "[t]he Secretary will not consider in the final determination or the final results, or retain in the record of the proceeding, any factual information submitted after the applicable time limit." 19 C.F.R. § 353.31(a)(3) (1994). Factual information for the final determination must be submitted "seven days before the scheduled date on which the verification is to commence." 19 C.F.R. § 353.31(a)(1)(i) (1994). This Court finds plaintiffs' submissions are appropriately categorized as "factual information" and more particularly as "[d]ata or statements of fact in support of [plaintiffs'] allegations" that Commerce should have adjusted the direct process chemical usage to reflect the ore's iron content. Plaintiffs' submissions are not simply an "algebraic manipulation" as claimed by Kerr–McGee (Pls.' Memo at 35), but are substantive arguments for a new methodology whose consideration at this late juncture is outside the scope of permissible corrections under 19 C.F.R. § 353.28(d) (1994).

### III. *The Appropriate Surrogate Ore*

 Several of the arguments raised by plaintiffs in their motion papers and subsequent memoranda to this Court argue Commerce acted incorrectly in choosing ore 2 as the appropriate surrogate ore. For example, plaintiffs several times point to the Department's discussion of ore 2, in which Commerce states the " 'metallurgical price' [of ore 2] appears aberrational." (App. to Def.'s Chron. of Events ("Def.'s App.") at 5.) Plaintiffs also argue Commerce's rationale for changing the referenced ore price late in the proceeding is "highly implausible." (Pls.' Memo at 25.) However, such substantive arguments go to the merits of the case—to the issue of plaintiffs' position with respect to the choice of ore issue—and are not relevant to plaintiffs' Motion to Settle the Record. In a memorandum submitted to this Court on December 9, 1996, plaintiffs argue:

> Defendant seems to admit that it has chosen an incorrect Indian ore and that it would require massive adjustment to all elements of the computer program developed from actual Chinese data to use it to make manganese metal, which no one on the face of the earth actually does because of the impurities. Therefore, and going straight to the core problem of what Commerce did, the record, inevitably, must be reopened and the parties should negotiate that immediately and deal responsibly with this error, since it is an obvious error and it will simply never go away as a legal issue—whether characterized as lack of procedural due process or lack of substantive evidence—until it is corrected.

(Pls.' Dec. 9, 1996 Mem. at 1.) [7] Whether defendant's choice of ore for its dumping calculations was proper, an issue raised by plaintiffs in their complaint, is not before the Court at this time. In this opinion, the Court is concerned only with what documents the record on appeal shall include and whether defendant acted within the scope of its authority in redacting plaintiffs' submissions concerning certain formulae and data related to the adjustment of the surrogate manganese ore for direct process chemical usage.

These issues are separate and distinct and the Court will not address plaintiffs' arguments regarding the choice of ore within the context of their Motion to Settle the Record. Kerr–McGee cannot challenge Commerce's selection of a surrogate ore and surrogate value methodology under the guise of it Motion to Settle the Record.

### CONCLUSION

For the reasons discussed above, this Court denies Kerr–McGee's Motion to Settle the Record and to restore the submissions redacted by Commerce. The Court finds Kerr–McGee had substantial notice ore 2 was being considered by the Department as a surrogate ore and had ample time to submit any adjustment formulae it thought necessary in order to make ore 2 a suitable surrogate. Further, the Court holds plaintiffs' submissions did not identify ministerial errors, but rather consisted of new factual information which was untimely submitted. Accordingly, the Court holds Commerce acted within the scope of its authority in redacting plaintiffs' submissions from the record as they were not "information presented to or obtained by the Secretary, the administering authority or the Commission *during the course of the administrative proceeding.*" 19 U.S.C. § 1516a(b)(2)(A)(i) (1994) (emphasis added). This Court holds Commerce's redaction of plaintiffs' submissions is supported by substantial evidence on the record and is otherwise in accordance with law. Plaintiffs' Motion to Settle the Record is, therefore, denied.

### ORDER

Upon due consideration of the motion submitted by plaintiffs and the opposition thereto, and upon all of the papers submitted herein by the parties and upon due deliberation, it is hereby

**ORDERED** that plaintiffs' Motion to Settle the Record is denied.

---

7. On December 9, 1996, plaintiffs submitted a "brief memorandum in response to the [chronology] from Defendant."