**Slip Op. 99-66**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: SENIOR JUDGE NICHOLAS TSOUCALAS

| | |
|---|---|
| PEER BEARING COMPANY, | : |
| Plaintiff, | : |
| L & S BEARING COMPANY, | : |
| Plaintiff-Intervenor, | : |
| v. | :    Court No. 97-12-02123 |
| UNITED STATES, | : |
| Defendant, | : |
| THE TIMKEN COMPANY, | : |
| Defendant-Intervenor. | : |

Plaintiff Peer Bearing Company ("Peer") moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record challenging the final determination of the Department of Commerce, International Trade Administration ("Commerce"), entitled <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China; Final Results of Antidumping Administrative Review</u>, 62 Fed. Reg. 61,276 (Nov. 17, 1997). Specifically, Peer alleges that Commerce made certain clerical errors in its calculation of labor rates and in its selection of factors of production data.

**Held:** Plaintiff's motion for judgment on the agency record is granted in part and denied in part. The case is remanded for correction of clerical errors in Commerce's calculations of labor rates. Commerce is affirmed in all other respects.

[Plaintiff's motion granted in part and denied in part. Case remanded.]

Dated: July 21, 1999

Arent Fox Kintner Plotkin & Kahn, PLLC (John M. Gurley, Matthew J. McConkey and Jinhee K. Wilde) for plaintiff.

David W. Ogden, Acting Assistant Attorney General; David M. Cohen, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Michele D. Lynch); of counsel: Rina Goldenberg, Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, for defendant.

Stewart and Stewart (Terence P. Stewart, James R. Cannon, Jr. and Amy S. Dwyer) for defendant-intervenor.

Cohen Darnell & Cohen, PLLC (Mark A. Cohen) for plaintiff-intervenor.

## OPINION

**TSOUCALAS, Senior Judge**: This case involves the shipments of tapered roller bearings ("TRBs") and parts thereof, finished and unfinished, from the People's Republic of China ("PRC").

On July 9, 1997, the Department of Commerce, International Trade Administration ("Commerce"), published the preliminary results of its administrative review covering TRBs from the PRC. See Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China; Preliminary Results of Antidumping Administrative Review and Partial Termination of Administrative Review ("Preliminary Results"), 62 Fed. Reg. 36,764.

Plaintiff[1] Peer Bearing Company ("Peer") moves pursuant to Rule 56.2 of the Rules of this Court for judgment on the agency record challenging Commerce's final determination, entitled <u>Tapered Roller Bearings and Parts Thereof, Finished and Unfinished, From the People's Republic of China; Final Results of Antidumping Administrative Review</u>, ("<u>Final Results</u>") 62 Fed. Reg. 61,276 (Nov. 17, 1997). Specifically, Peer alleges that Commerce made certain clerical errors in its calculation and selection of labor rates and factors of production data in the <u>Final Results</u>.[2]

Oral argument was held at the Court on February 26, 1999.

<u>Discussion</u>

This Court has jurisdiction in this case pursuant to 19 U.S.C. § 1516a(a)(2) (1994) and 28 U.S.C. § 1581(c) (1994).

The Court must uphold Commerce's final determination unless it is "unsupported by substantial evidence on the record, or otherwise

---

[1] The Court granted L & S Bearing Company's Motion to Intervene on February 27, 1998. L & S Bearing Company did not file additional papers.

[2] The determination at issue covers the ninth period of review from June 1, 1995 through May 31, 1996. Because Commerce initiated this review after January 1, 1995, the applicable law in this case is the antidumping code as amended by the Uruguay Round Agreements Act, Pub. L. No. 103-465,108 Stat. 4809 (1994). <u>See</u> <u>Torrington Co. v. United States</u>, 68 F.3d 1347, 1352 (Fed. Cir. 1995).

not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It is not within the Court's domain either to weigh the adequate quality or quantity of the evidence for sufficiency or to reject a finding on grounds of a differing interpretation of the record." Timken Co. v. United States, 12 CIT 955, 962, 699 F. Supp. 300, 306 (1988), aff'd, 894 F.2d 385 (Fed. Cir. 1990).

Ministerial Errors

1. Labor Rates

Because this case deals with bearings imported from the PRC, a nonmarket economy, and because no other usable data was available, Commerce calculated normal value ("NV") based on factors of production ("FOP") pursuant to 19 U.S.C. § 1677b(c) (1994).

Peer challenges the labor rates used to calculate FOP for one of its Chinese suppliers. In the Final Results, in calculating FOP for NV, Commerce accidentally used an unskilled labor rate of 46.6 Rupees per hour and a skilled labor rate of 25.42 Rupees per hour instead of the reverse.

Commerce agrees that its inadvertent reversal of the skilled and unskilled labor rates in its calculations constitutes a ministerial error and requests a remand to correct it. Commerce's Mem. Opp'n to Mot. J. Agency R. at 2, 6. Timken does not object to a remand. Timken's Mem. Opp'n to Mot. J. Agency R. at 6.

The Court has often remanded in cases such as these to correct ministerial errors of this type. See Federal-Mogul Corp. v. United States, 18 CIT 1168, 1172, 872 F. Supp. 1011, 1014 (1994). Consequently, the Court grants Commerce's request for a remand to correct the inadvertent reversal of the labor rates in its FOP calculations and to adjust the dumping margins accordingly.

2. Factors of Production Data for Bearing Part

On May 13, 1997, Commerce sent a questionnaire to Peer and Chin Jun Industrial Ltd. ("Chin Jun"), an affiliate of Peer's, requesting FOP data from all suppliers for the bearings under review. Peer's response, received on June 4, 1997, provided the following information:

> Peer/Chin Jun has attempted to obtain factors of production FOP data for all of its suppliers. However, Peer/Chin Jun does not control the Chinese suppliers and must not be held responsible for their failure to supply FOP data. However, many of Peer's suppliers have supplied similar information as respondents in this review. To the extent factors data is available from these respondents, then it should be used. We are

> incorporating by reference the factor information
> supplied by various respondents. A listing of model and
> the corresponding supplier is listed in Exhibit 1. . . .
> [A]lso enclosed at Exhibit 1 is a list of models produced
> by other factories which can be used as FOP for Chin
> Jun/Peer models for which FOP data is not available.

See Response of Peer to Commerce's Supplemental Questionnaire, Pub.

Doc. No. 205, Def.'s App., Ex. 4.

Attached to Peer's submission was a letter from counsel for

other respondents who also used Peer/Chin Jun's suppliers.  Peer

authorized Commerce to use the cooperating respondents' FOP

information to calculate the production costs for Peer/Chin Jun

during the relevant POR.  Both parties used data from an agreed

upon factory supplier[3] as an analog for Peer's product model.  See

Peer's Comments Regarding Commerce's Final Calculations, at 2

(Public Version), Peer's Mem. Supp. Mot. J. Agency R., Attachment

1 (Nov. 25, 1997).

Peer submitted a chart to Commerce to identify which model

numbers already on file with Commerce correspond to Peer's models

for purposes of determining FOP.  Peer noted that FOP data for

models LM67010 and LM 67048 could be found in the set LM67048/10.

Peer's listing also noted that the set contained FOP information

---

[3] The name of the relevant supplier used by Peer and Commerce
for FOP data is part of the Confidential Record.

for both the cup and the cone.[4]  Commerce used the factors for the set to determine the FOP data of part LM67048.  See id.

Peer argues that to determine the FOP for LM67048, Commerce needed only to deduct the factors of LM67010 from the total factors for the set LM67048/10.  Commerce did not perform this additional calculation, but instead used the FOP of the set as the FOP for Peer's single bearing part LM67048.  See id.

Only after the publication of the Final Results, in a letter dated November 25, 1997, did Peer inform Commerce for the first time that Commerce erroneously used the FOP for the set LM67048/10 instead of the FOP for the individual parts LM67048 and LM67010.  See id.  Commerce refused to consider this information after the publication of the Final Results.

Peer now argues that its simple instruction on its submission to Commerce indicating that a set contains FOP data for both a cup and cone clearly indicated that Commerce had to subtract the FOP of part LM 67010 from the set of LM67048/10 to obtain the FOP for part LM67048.  Essentially, Peer argues that Commerce misunderstood its

---

[4]  A TRB consists of a cone (inner race), cage (roller retainers), and a roller in one assembled unit, and the cup (outer race), which is the outer ring on which the rollers turn.  See Peer Bearing Co. v. United States, 22 CIT __, __, 12 F. Supp. 2d. 445, 454 n.8 (1998).  In this case, LM67048 and LM670410 are the cup and cone comprising the LM67048/10 set.

instruction and misapplied the substitute FOP data in determining NV.

Commerce responds that it used the information as submitted by Peer in its chart of corresponding model matches and that its deliberate use of this information is not a clerical error. Commerce further contends that it used the same information in the Preliminary Results and in the Final Results and that Peer is barred at this time from raising this issue because Peer failed to exhaust its administrative remedies as required by 28 U.S.C. § 2637. See Commerce's Mem. Opp'n to Mot. J. Agency R. at 7-14.

As a preliminary matter, the Court is not convinced that Commerce committed any error at all. At oral argument, Commerce asserted that it will often use data for bearing sets to determine the FOP for a bearing part in lieu of better information. If Peer did not approve of Commerce's use of the data it submitted, Peer should have raised the issue to Commerce during the administrative proceedings. Commerce could have then determined not to use the information submitted by Peer at all, and to resort to best information available. The Court cannot simply bypass this process and remand for Commerce to use a particular value for FOP when Commerce was not given the opportunity to expound and justify its reasoning for using the FOP of an entire set in its calculations.

Further, a "ministerial error" includes clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial. 19 U.S.C. § 1675(h)(1994); 19 C.F.R. § 351.224(f) (1998). Peer presents substantive arguments for an alternative method of interpreting the data it submitted. The Court's consideration of Peer's arguments at this late juncture is outside the scope of permissible corrections of ministerial errors. See Kerr-McGee Chem. Corp. v. United States, 21 CIT __, __, 955 F. Supp. 1466, 1475 (1997) (holding that plaintiff's submissions after the final determination contesting selection of surrogate values do not identify clerical or ministerial errors, but rather contain new information and therefore cannot be included in the record or considered by the Court).

Moreover, the allegation of faulty judgment inherently falls outside the purview of a ministerial error. See NTN Bearing Corp. v. United States, 74 F.3d 1204, 1208 (Fed. Cir. 1995)("Clerical errors are by their nature not errors in judgment but merely inadvertencies."); see also 19 C.F.R. § 351.224(f) (defining ministerial error). Commerce's alleged inability to understand Peer's directions would constitute an error in its "judgment." If the use of the FOP of a set was an error in Commerce's

interpretation of Peer's poorly drafted instructions, this would be an interpretative error, not an error in "arithmetic function," "clerical error resulting from inaccurate copying" or an "unintentional error."  See 19 C.F.R. § 353.224(f).  Peer is therefore not challenging a calculation which could be classified as a ministerial error.  Further, Peer did not raise the error at the earliest reasonable opportunity.  Under these circumstances, the Court will not order a remand for the correction of these alleged errors.

Notably, Commerce has broad discretion to determine what constitutes a ministerial error. See Cemex, S.A. v. United States, 19 CIT 587, 593 (1995) ("Commerce is given fairly broad discretion to determine which types of unintentional error to regard as ministerial.").  The Court deems it significant that Commerce denies committing any error in this case.  However, even if there were a clerical error, Peer is time-barred from raising it now.

"The exhaustion doctrine reflects a respect for values of judicial economy and administrative autonomy."  Mitsubishi Heavy Indus., Ltd. v. United States, 22 CIT __,__, 15 F. Supp. 2d 807, 820 n.6 (1998) (internal quotations omitted)(citing Al Tech Specialty Steel Corp. v. United States, 11 CIT 372, 377, 661 F. Supp. 1206, 1210 (1987)).  Judicial economy, fairness to the

parties and the need to fulfill Congress' intent of prompt resolution of these trade matters requires that errors of methodology, data selection and calculation be raised at the outset, unless some extraordinary factor supports relief at a later date.  See <u>IPSCO, Inc. v. United States</u>, 965 F.2d 1056, 1062 (Fed. Cir. 1992).  There are no such extraordinary factors here.  <u>See, e.g.</u>, <u>Peer Bearing</u>, 22 CIT at __, 12 F. Supp. 2d at 452-53 (finding that Commerce's use of an antidumping duty rate invalidated by Court order was an error warranting judicial review despite the lack of exhaustion) (citing <u>Mitsui & Co. v. United States</u>, 18 CIT 185, 194 (1994)); <u>see also</u> <u>NTN</u>, 74 F.3d at 1208 (court granted remand for clerical error discovered after preliminary determination because preliminary determinations are inherently subject to change).

"[A] remand requires a showing that the failure to raise an issue was not the result of a lack of due diligence on the part of the claimant." <u>Bethlehem Steel Corp. v. United States</u>, 22 CIT __, __, 27 F. Supp. 2d 201, 206 (1998) (citing <u>ILWU Local 142 v. Donovan</u>, 12 CIT 87, 91, 678 F. Supp. 307, 310 (1988)).  Peer does not dispute that the alleged error was present in the margin calculations in the <u>Preliminary Results</u> of this review.  Peer therefore failed to exercise due diligence and cannot raise, at

this point in time, allegations of ministerial errors which were discoverable in the calculations of the preliminary results. This is especially true when the gravamen of the dispute is whether a ministerial error occurred in the first place.

It is not clear to the Court why the use of the FOP data of the set became obvious to Peer only after the <u>Final Results</u> were published, if, as Peer claims, the same error had been made in the <u>Preliminary Results</u> and if it were so egregious that it raised the margin by more than 100 percent. What is clear to the Court, however, is that it was the job of Peer's counsel to review Commerce's calculations upon publication of the <u>Preliminary Results</u>. According to counsel for Peer, "a large part of the dumping margin . . . was caused by dumping margins attributable to Model LM67010" and that model was "one of the most prevalent model[s] sold" by respondent. Peer's Mot. J. Agency R. at 4, 5. With that information, the Court is all the more perplexed at counsel's failure to discover the error in question in a timely fashion.

Failure to review the calculations because it had "no time to carefully consider" the <u>Preliminary Results</u>, as Peer's counsel argued to the Court, is no excuse for Peer's failure to discover and raise the possibility of error as early in the administrative

process as possible and thereby to exhaust its administrative remedies, as required under 28 U.S.C. § 2637(d). However, in this case, Commerce, too, may have been remiss in its duty. The instruction included in Peer's submission should have alerted Commerce to the need, at the very least, to request further clarification of the "set" versus "individual product" issue. Diligence is incumbent upon all parties involved in an administrative proceeding or litigation. Nonetheless, unlike ministerial errors, there is no way for the Court to determine with accuracy whether Commerce made an inadvertent error in inputting the data or whether Commerce's selection of the set's data to calculate the FOP was an error at all.

In fact, Commerce does not admit to committing any error, ministerial or substantive. Rather, Commerce insists that it deliberately and reasonably applied the information as submitted by Peer.[5] In any event, this dispute should have been developed further, or at least raised, at the administrative level. The doctrine of administrative exhaustion prevents the development and, hence the litigation, of these types of issues before this Court.

---

[5] At oral argument, counsel for the government asserted that Commerce could have reasonably interpreted Peer's notation to mean that Peer was aware it was submitting FOP data for an entire set to be used for a bearing part. The Court does not find this interpretation to be unreasonable.

In the current case, Peer/Chin Jun did not raise the set/part dispute until after the issuance of the Final Results.  As stated in Aramide Maatschappij V.o.F. v. United States, 19 CIT 1094, 901 F. Supp. 353 (1995), the critical issue in determining whether the plaintiff failed to exhaust its administrative remedies, is whether the plaintiff was on "notice of Commerce's intended computation." Aramide, 19 CIT at 1097, 901 F. Supp. at 357.

Similar to Aramide, the plaintiffs were on notice of Commerce's intended computation.  In the preliminary determination calculation worksheets, Commerce used the FOP of the model set for the individual parts LM67048 and LM67010.  In addition, Peer/Chin Jun should have reviewed Commerce's calculations after the Preliminary Results.  Had Peer's counsel done so, they would have noticed that Commerce used the factor of a set for the individual parts LM67048 and LM67010.

The need for judicial economy and administrative autonomy requires the Court to adhere to Commerce's Final Results.  "There can be no doubt that Congress intended final determinations to be precisely that.  Indeed, if determinations were constantly subject to amendment, it would be difficult to answer the question as to when a final determination would ever be made." Sugiyama Chain Co. v. United States, 16 CIT 526, 533, 797 F. Supp. 989, 995 (1992)

(internal quotations omitted) (quoting <u>Koyo Seiko Co. v. United States</u>, 14 CIT 680, 682, 746 F. Supp. 1108, 1110 (1990) (quoting, in turn, <u>Badger-Powhatan, Div. of Figgie Int'l v. United States</u>, 10 CIT 241, 245, 633 F. Supp. 1362, 1369 (1986)).  Since Peer could have raised these issues regarding the calculation of FOP during the course of the administrative proceedings, the Court declines to review Peer's position.


<u>Conclusion</u>

The Court remands so that Commerce may correct the inadvertent reversal of labor rates in its FOP calculations.  Commerce is affirmed in all other respects.

_____
NICHOLAS TSOUCALAS
SENIOR JUDGE


Dated: July 21, 1999
       New York, New York